AMERICAN BANK & TRUST CO. ET AL. *v.* DALLAS
COUNTY ET AL.

No. 81–1717.   Argued March 29, 1983—Decided July 5, 1983*

*Together with *Bank of Texas et al.* v. *Childs et al.*, and *Wynnewood Bank & Trust et al.* v. *Childs et al.*, also on certiorari to the same court (see this Court's Rule 19.4).

*Marvin S. Sloman* argued the cause for petitioners. With him on the briefs were *Brian M. Lidji, Peter S. Chantilis, Cecilia H. Morgan, Roy Coffee, Christopher G. Sharp,* and *Bruce W. Bowman, Jr.*

*Ernest J. Brown* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Lee, Assistant Attorney General Archer,* and *Michael L. Paup.*

*Carroll R. Graham* argued the cause for respondents City of Dallas et al. With him on the brief were *Douglas H. Conner III* and *Jan W. Fletcher. Earl Luna* argued the cause for respondents Dallas County et al. With him on the briefs was *Randel B. Gibbs. Henry D. Atkin, Jr.,* filed a brief for respondents Richardson Independent School District et al. *Charles M. Hinton, Jr.,* filed a brief for respondents City of Garland et al.†

JUSTICE BLACKMUN delivered the opinion of the Court.

The question presented is whether a Texas property tax on bank shares, computed on the basis of the bank's net assets without any deduction for tax-exempt United States obligations held by the bank, violates Rev. Stat. § 3701, as amended. The Texas Court of Civil Appeals ruled that it did not.

---

†Briefs of *amici curiae* urging reversal were filed by *William H. Smith* and *Michael F. Crotty* for the American Bankers Association; and by *Frank A. Sinon* and *Sherill T. Moyer* for the Dale National Bank.

Briefs of *amici curiae* urging affirmance were filed by *Michael J. Bowers,* Attorney General, *Robert S. Stubbs II,* Executive Assistant Attorney General, *H. Perry Michael,* First Assistant Attorney General, *Verley J. Spivey,* Senior Assistant Attorney General, and *James C. Pratt,* Assistant Attorney General, for the State of Georgia; and by *C. Richard Fine* for the Texas Association of Appraisal Districts et al.

Briefs of *amici curiae* were filed by *Mike Westergren, Alan Gallagher, J. Bruce Aycock,* and *Felix Hallum George, Jr.,* for Nueces County, Texas, et al.; and by *Jay D. Howell, Jr.,* and *Daniel Doherty* for the City of Houston.

I

Until 1959, Rev. Stat. §3701, 31 U. S. C. §742, provided, in pertinent part, that "[a]ll stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority." This Court consistently held that this language prohibited state taxes imposed *on* federal obligations, either directly, or indirectly as part of a tax on the taxpayer's total property or assets. See *Society for Savings* v. *Bowers*, 349 U. S. 143, 147–148 (1955). The Court also consistently held, however, that §3701 did not prohibit nondiscriminatory taxes imposed on discrete property interests such as corporate shares or business franchises, even though the value of that discrete interest was measured by the underlying assets, including United States obligations. See *Werner Machine Co.* v. *Director of Taxation*, 350 U. S. 492, 493–494 (1956); *Society for Savings* v. *Bowers*, 349 U. S., at 147–148; *Des Moines National Bank* v. *Fairweather*, 263 U. S. 103, 112 (1923); *Home Savings Bank* v. *Des Moines*, 205 U. S. 503, 518–519 (1907); *Provident Institution* v. *Massachusetts*, 6 Wall. 611, 629–632 (1868). Similarly, the Court interpreted Rev. Stat. §3701 not to prohibit taxes imposed on a discrete transaction, such as an inheritance, even though the value of the inheritance was measured according to the value of the federal obligations transferred. *Plummer* v. *Coler*, 178 U. S. 115, 133–134 (1900). In 1956, the Court observed that this formal but economically meaningless distinction between taxes on Government obligations and taxes on separate interests was "firmly embedded in the law." *Society for Savings* v. *Bowers*, 349 U. S., at 148.

In 1959, Congress amended §3701 by adding a second sentence: "This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax," with exceptions only for nondiscriminatory franchise taxes or other nonproperty taxes, and for estate or inheritance taxes. Act of Sept. 22, 1959,

§ 105(a), 73 Stat. 622.[1]   The issue is whether this amendment extends to a state bank shares tax.

## II

In 1979 and 1980, Texas imposed a property tax on bank shares and a separate tax on the real estate holdings of banks.   Tex. Rev. Civ. Stat. Ann., Art. 7166 (Vernon 1960).[2]

---

[1] Section § 3701, as so amended, 31 U. S. C. § 742, read:

"[A]ll stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority.   This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes."

Title 31 of the United States Code was not enacted into positive law until 1982, when it was reformulated without substantive change.   Rev. Stat. § 3701, 31 U. S. C. § 742, then was replaced by 31 U. S. C. § 3124(a) (1982 ed.).   Act of Sept. 13, 1982, 96 Stat. 877, 945.   Because the state taxes at issue here were levied in 1979 and 1980, the former Rev. Stat. § 3701, as amended, rather than the present 31 U. S. C. § 3124(a) (1982 ed.) technically controls these cases.

[2] As of January 1, 1982, Art. 7166 was replaced by substantively similar provisions of the Texas Property Tax Code.   See Tex. Tax Code Ann. §§ 21.09, 22.06, 23.11, 25.14 (1982).   Until 1982, and at all times pertinent to these cases, Tex. Rev. Civ. Stat. Ann., Art. 7166 (Vernon 1960), read, in relevant part:

"Every banking corporation, State or national, doing business in the State shall, in the city or town in which it is located, render its real estate to the tax assessor at the time and in the manner required of individuals. At the time of making such rendition the president or some other officer of said bank shall file with said assessor a sworn statement showing the number and amount of shares of said bank, the name and residence of each shareholder, and the number and amount of shares owned by him.   Every shareholder of said bank shall, in the city or town where said bank is located, render at their actual value to the tax assessor all shares owned by him in such bank; and in case of his failure to do so, the assessor shall assess such unrendered shares as other unrendered property.   Each share in such bank shall be taxed only for the difference between its actual cash value and the proportionate amount per share at which its real estate is assessed. . . . Nothing herein shall be so construed as to tax national or

It required each bank doing business in the State to report its real estate to the local tax assessor, and to submit a list of its shareholders with the number of shares owned by each. The shareholders were required to report the actual value of their shares to the assessor in the bank's jurisdiction. To prevent double taxation, each share was to be taxed to the shareholder on the difference between the share's cash value and the proportionate amount per share of the bank's real estate assessment.

Petitioners are certain state and national banks and their shareholders. Respondents are taxing subdivisions of the State of Texas, and officers and Boards of Equalization of those subdivisions, that levied taxes on petitioners' bank shares pursuant to Art. 7166. In determining the value of the bank shares subject to the tax, respondents included the value of United States obligations held by the banks. Petitioners sought mandamus, declaratory, and injunctive relief against respondents in state court, asserting that § 3701 required that the value of their bank shares be reduced by the proportionate value of the United States obligations held by the bank.

In its initial opinion concerning petitioner Bank of Texas, the Texas Court of Civil Appeals held that the plain language of § 3701, as amended, precludes consideration of United States obligations in the computation of any state or local tax. App. to Pet. for Cert. 50a. On motions for rehearing, the court withdrew its original opinion and, instead, upheld the tax. *Bank of Texas* v. *Childs*, 615 S. W. 2d 810 (1981). The court stated that, prior to the 1959 amendment to § 3701, a different statute, Rev. Stat. § 5219, as amended, 12 U. S. C. § 548,[3] had authorized state taxation of shares of national

State banks, or the shareholders thereof, at a greater rate than is assessed against other moneyed capital in the hands of individuals."

[3] Before its amendment in 1969, Rev. Stat. § 5219, as amended by the Act of Mar. 25, 1926, ch. 88, 44 Stat. 223, 12 U. S. C. § 548, provided, in relevant part:

"The legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of

banks without reduction in value for obligations of the United States held by the banks.   615 S. W. 2d, at 817–820.   The court concluded that the 1959 amendment to § 3701 had not withdrawn this authorization.   615 S. W. 2d, at 819–820. The court reasoned that if the 1959 amendment had withdrawn the authorization granted by § 5219, in effect it would have repealed a portion of that statute, and that repeals by implication are not favored.   615 S. W. 2d, at 820–822.[4] Similar judgments were entered in companion cases.   App. to Pet. for Cert. 2a, 41a.   The Court of Civil Appeals denied motions for rehearing, 615 S. W. 2d, at 823–826; App. to Pet. for Cert. 3a, 42a.   The Supreme Court of Texas denied applications for writs of error.   Id., at 4a, 39a, 43a.

Because the decisions of the Court of Civil Appeals appeared to be inconsistent with decisions of the Supreme Court of Montana,[5] and because of the importance of the issue, we granted certiorari.   459 U. S. 966 (1982).

---

national banking associations located within its limits.   The several States may (1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their net income, or (4) according to or measured by their net income. . . ."

The statute required that any such tax comply with certain conditions, principally designed to prohibit discrimination against national banks.

As amended in 1969, § 5219 provides: "For the purposes of any tax law enacted under authority of the United States or any State, a national bank shall be treated as a bank organized and existing under the laws of the State or other jurisdiction within which its principal office is located." Pub. L. 91–156, § 2(a), 83 Stat. 434.

[4] The court also rejected claims that the tax violated state law and the United States Constitution by placing a tax burden on banks heavier than it placed on other "moneyed capital" in the State.   615 S. W. 2d, at 813–816, 822–823.   These holdings are not before us.

[5] Montana Bankers Assn. v. Montana Dept. of Revenue, 177 Mont. 112, 580 P. 2d 909 (1978); First Security Bank of Bozeman v. Montana Dept. of Revenue, 177 Mont. 119, 580 P. 2d 913 (1978).   The Supreme Court of Georgia has upheld a similar bank shares tax.   Bartow County Bank v. Bartow County Board of Tax Assessors, 248 Ga. 703, 285 S. E. 2d 920 (1982), appeal docketed, No. 81–1834.

## III

### A

"Absent a clearly expressed legislative intention to the contrary, [the statutory] language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.*, 447 U. S. 102, 108 (1980). The exemption for federal obligations provided by § 3701, as amended in 1959, is sweeping: with specific exceptions, it "extends to *every form* of taxation that would require that either the obligations or the interest thereon, or both, *be considered, directly or indirectly, in the computation* of the tax" (emphasis supplied). See *Memphis Bank & Trust Co.* v. *Garner*, 459 U. S. 392, 395–396 (1983) (the statute "establishes a broad exemption").

The 1959 amendment rejected and set aside this Court's rather formalistic pre-1959 approach to § 3701. Under that approach, if a tax were imposed on a property interest or transaction separate from the ownership of federal obligations, the method by which the tax was computed was entirely irrelevant. *Plummer* v. *Coler*, 178 U. S., at 129; *Home Ins. Co.* v. *New York*, 134 U. S. 594, 600, 602, 606 (1890). This remained true despite the Court's recognition that the practical impact of such a tax is indistinguishable from that of a tax imposed directly on corporate assets that include federal obligations. See *Society for Savings* v. *Bowers*, 349 U. S., at 148. Under the plain language of the 1959 amendment, however, the tax is barred regardless of its *form* if federal obligations must be considered, either directly or indirectly, in *computing* the tax.

Giving the words of amended § 3701 their ordinary meaning, there can be no question that federal obligations were considered in computing the bank shares tax at issue here. In context, the word "considered" means taken into account, or included in the accounting.[6] The tax at issue was com-

---

[6] Respondents Dallas County et al. suggest that "considered" may mean "characterized by deliberate thought," so that a tax would be invalid under

puted by use of an "equity capital formula," which involved determining the amount of the bank's capital assets, subtracting from that figure the bank's liabilities and the assessed value of the bank's real estate, and then dividing the result by the number of shares.   615 S. W. 2d, at 816. Plainly, such a tax takes into account, at least indirectly, the federal obligations that constitute a part of the bank's assets. Cf. *Society for Savings* v. *Bowers*, 349 U. S., at 146–147 (tax on total assets of corporation is tax on federal obligations it owns); *New Jersey Realty Title Ins. Co.* v. *Division of Tax Appeals*, 338 U. S. 665, 672–673 (1950) (same); *Bank Tax Case*, 2 Wall. 200, 208–209 (1865) (same).[7]

The express exceptions to the 1959 amendment—franchise taxes and estate and inheritance taxes—reinforce this conclusion.   Just as state tax laws relating to corporate or bank shares generally assess the shares according to the value of the corporation's assets, see *Society for Savings* v. *Bowers*, 349 U. S., at 148, franchise and estate and inheritance taxes customarily assess the franchise or the demise at the value of the assets of the business or at the value of the property inherited.   See, *e. g.*, *Werner Machine Co.* v. *Director of Taxation*, 350 U. S., at 492 (franchise tax measured by "net worth"); *Plummer* v. *Coler*, 178 U. S., at 134 (inheritance tax measured by "the value of the property passing"); *Home Ins. Co.* v. *New York*, 134 U. S., at 599 (franchise tax measured by "capital stock and dividends").

Prior to the 1959 amendment, franchise and estate and inheritance taxes measured by the value of federal obligations,

---

the section only if the tax assessor subjectively knew that the bank's assets included federal obligations.   Brief for Respondents Dallas County et al. 8–9.   Respondents do not explain why Congress might have believed the subjective knowledge of the tax assessor worthy of federal concern. Moreover, on its face, the statute bars taxes requiring that federal obligations be considered "indirectly" in computing the tax.

[7] A Texas Court of Civil Appeals itself has stated that each asset of a bank, apart from real estate holdings, is "included and considered in arriving at the value of the Bank's shares."   *City of Midland* v. *Midland National Bank*, 607 S. W. 2d 303, 304 (1980).

like bank shares taxes, were upheld on the theory that the tax was levied on the franchise or the transfer of property, rather than on the ownership interest in the federal securities themselves. By expressly exempting franchise and estate and inheritance taxes from the amended § 3701, Congress manifested its awareness that the new language would broaden significantly the prohibition as it had been construed by the courts. Congress must have believed that franchise and estate and inheritance taxes required federal obligations to "be considered, directly or indirectly, in the computation of the tax"; otherwise, the specific exemptions for these taxes would have been superfluous. There is no reason to conclude that shares taxes are any different.

The language of § 3701 encompasses "every form of taxation," and is inconsistent with implied exceptions. Cf. *Lewis v. United States*, 445 U. S. 55, 60–62 (1980). From the specific exceptions for franchise and estate and inheritance taxes, and the conspicuous omission of shares taxes from that group, only one inference is possible: Congress meant to bar shares taxes to the extent they consider federal obligations in the computation of the tax. Cf. *Andrus v. Glover Construction Co.*, 446 U. S. 608, 616 (1980); *Andrus v. Allard*, 444 U. S. 51, 56 (1979).[8]

---

[8] The unenacted 31 U. S. C. § 742, which codified Rev. Stat. § 3701, included the introductory phrase "Except as otherwise provided by law . . . ." Rev. Stat. § 3701 itself did not include that phrase, however, and the Statutes at Large prevail over the Code whenever the two are inconsistent. *Stephan v. United States*, 319 U. S. 423, 426 (1943). In fact, Congress was aware that Rev. Stat. § 3701 did not contain this phrase. Both the House and Senate Reports, although mentioning the phrase at one point, see S. Rep. No. 909, 86th Cong., 1st Sess., 11 (1959) (Senate Report); H. R. Rep. No. 1148, 86th Cong., 1st Sess., 12 (1959) (House Report), properly set forth the statute without the introductory clause. Senate Report, at 22; House Report, at 25. Moreover, the Reports summarized the amendment as making clear that, with specified exceptions, "both the principal and interest on U. S. obligations are exempt from all State taxes except . . . ." Senate Report, at 2; House Report, at 2. There was no suggestion that some category of state taxes apart from those specifically preserved was to be impliedly excepted.

Respondents Dallas County et al. argue, however, that § 3701 does not prohibit the Texas tax because, on its face, the tax statute does not require use of the equity capital formula or any other formula based on the value of federal obligations. Brief for Respondents Dallas County et al. 10–11. In the present litigation, however, the assessors did use the equity capital formula, which is the usual method for assessing the value of bank shares, see *Society for Savings* v. *Bowers*, 349 U. S., at 148,[9] and is "the usual and customary method used in Texas to arrive at such value." *City of Midland* v. *Midland National Bank*, 607 S. W. 2d 303, 304 (1980). Respondents have not cited a single instance where a different formula was employed. Section 3701 prohibits any form of tax that would require consideration of federal obligations in computing the tax; it cannot matter whether such consideration is mandated by the tax assessor in practice or by the state statute in so many words.[10] The taxes at issue therefore violated the plain language of § 3701.

## B

The legislative history of the 1959 amendment to § 3701, while not extensive, supports this construction of the amendment's effect. The catalyst for the amendment was an Idaho tax "upon every individual . . . which shall be according to and measured by his net income." See Idaho Code § 63–3011

---

[9] At the time the contested taxes were levied, at least six States other than Texas imposed a bank shares tax. Of the six statutes, five explicitly required that the share's value be determined according to the value of the bank's assets. See Ga. Code Ann. § 48–6–90 (1982); La. Rev. Stat. Ann. § 47:8 (West 1970) and § 47:1967(C) (West Cum. Supp. 1982); Nev. Rev. Stat. § 367:025 (1981); Ohio Rev. Code Ann. § 5725.04 (1980) (repealed, effective Jan. 1, 1983, see Ohio Rev. Code Ann. § 5725.04 (Supp. 1982)); Pa. Stat. Ann., Tit. 72, § 7701 (Purdon Supp. 1982). One of the statutes, like Texas', did not specify the method by which the assessment was to be made. See W. Va. Code § 11–3–14 (1974).

[10] Accordingly, we need not decide whether Texas, by the use of some other method of assessing the shares, could avoid the plain prohibition of the statute.

(1948). Despite this Court's holding that § 3701 precluded direct state taxation of the interest on federal obligations, as well as taxation of the underlying obligations, see *New Jersey Realty Title Ins. Co.* v. *Division of Tax Appeals*, 338 U. S., at 675–676, Idaho's position was that its tax need not exempt the interest received on federal obligations, because it was imposed on the individual and was merely measured by his net income, rather than being imposed on the income itself. See Hearings on Public Debt Ceiling and Interest Rate Ceiling on Bonds before the House Committee on Ways and Means, 86th Cong., 1st Sess., 69–70 (1959) (supplemental statement of Secretary of the Treasury Anderson) (Hearings). In presenting the 1959 amendment to Congress, the Secretary described Idaho's position as "rest[ing] upon a distinction of words which is without substance." *Id.*, at 71. Similar accusations had been leveled at this Court's analogous distinctions between shares taxes and franchise taxes on the one hand, and taxes on corporate assets on the other.[11]

Respondents suggest, however, that the 1959 amendment was intended only to make clear that income taxes like Idaho's, on interest from federal obligations, were unlawful. Congress, according to respondents, did not mean to set aside this Court's well-established distinction between taxes on assets and taxes on shares. We, however, have found no

---

[11] See, *e. g.*, *Van Allen* v. *Assessors*, 3 Wall. 573, 598–599 (1866) (Chase, C. J., concurring); 67 Cong. Rec. 6085–6986 (1926) (colloquy of Reps. Wingo and Cooper) (legalizing franchise tax measured by assets including federal obligations is "a use of words to conceal an idea"; "the decision of the Supreme Court which arrived at [that] conclusion gave me a headache, and it took me considerable time to be able to comprehend it"); *id.*, at 6088 (remarks of Rep. Stevenson) ("the Supreme Court of the United States frequently obscures ideas by language as well as statesmen when they are on the stump. . . . When they held that the stock was taxable, although every dollar of it was invested in United States bonds, which were expressly exempt from taxation, they held practically the same thing"). See also *Macallen Co.* v. *Massachusetts*, 279 U. S. 620, 628–629 (1929); *Society for Savings* v. *Bowers*, 349 U. S., at 148.

evidence whatsoever in the legislative history to suggest that Congress considered shares taxes to fall outside the scope of the prohibition. The fact that the 1959 legislative history refers to the Idaho tax, but not specifically to bank shares taxes, does not raise a "negative inference" limiting the amendment to this specific problem. *Newport News Shipbuilding & Dry Dock Co.* v. *EEOC,* 462 U. S. 669, 679 (1983). The amendment plainly did more than make clear that the interest on federal obligations was tax exempt. Idaho relied on the formal distinction between a tax on an individual, measured by his net income, and a tax on the income itself. See Hearings, at 70. To answer this argument, the amendment abolished the formalistic inquiry whether the tax is *on* a distinct interest, and replaced it with the inquiry whether "computation of the tax" requires consideration of federal obligations.

Nor can the 1959 amendment be read to apply only to income taxes; it reaches *"every* form of tax . . ." (emphasis supplied). Indeed, Congress felt compelled to exempt estate and inheritance and franchise taxes from the scope of its amendment precisely because the amendment was *not* limited to income taxes. Congress understood the amendment's effect; both the Senate and House Reports explained that the amendment "makes it clear that both the principal and interest on U. S. obligations are exempt from *all State taxes* except nondiscriminatory franchise, etc., taxes" (emphasis supplied). Senate Report, at 2; House Report, at 2. Congress intended to sweep away formal distinctions and to invalidate all taxes measured directly or indirectly by the value of federal obligations, except those specified in the amendment.

### IV

In an effort to avoid this result and to resurrect the formalistic approach, respondents embark on a tour of the history of an entirely different statute, Rev. Stat. § 5219, as amended, 12 U. S. C. § 548. Section 5219, they argue, au-

thorizes States to tax the full value of bank shares, and the 1959 amendment to §3701 did not repeal that authorization by implication. Even if the 1959 Congress abolished the distinction between taxes on and taxes measured by the value of federal obligations, respondents conclude, the Texas tax is valid.

It is true, of course, that "repeals by implication are not favored." *Posadas* v. *National City Bank*, 296 U. S. 497, 503 (1936). This doctrine flows from the basic principle that "courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton* v. *Mancari*, 417 U. S. 535, 551 (1974). But, at the time the taxes at issue were assessed, §5219 was clearly capable of coexistence with the plain language of §3701 as amended in 1959, and there is no justification for construing §5219 to create an inconsistency.

When the taxes challenged here were assessed, and now, §5219 provided only that States could not impose discriminatory taxes on national banks: "For the purposes of any tax law enacted under authority of the United States or any State, a national bank shall be treated as a bank organized and existing under the laws of the State or other jurisdiction within which its principal office is located." Section 3701's requirement that shares taxes on all corporations not consider federal obligations in their computation easily coexists with §5219's simple ban on discriminatory taxation of national banks. Giving each statute its common-sense meaning, the proper result in these cases could not be more clear.

Respondents, though, find an unexpressed exception for bank shares taxes in the plain language of §3701 by reading into the plain language of §5219 an unexpressed congressional authorization to tax bank shares at their full value. Respondents argue that this silent authorization may be found in §5219 by looking to the pre-1969 language of that

section.   Even assuming that such an adventure in statutory revision would be an appropriate exercise of judicial power, respondents' argument is based on an unnecessary construction of this earlier version of § 5219.

From 1926 until 1969, § 5219 provided that the States could tax national banks in only four ways: (1) by taxing bank shares, (2) by including bank share dividends in the taxable income of a shareholder, (3) by taxing national banks on their net income, or (4) by levying a franchise tax on national banks "according to or measured by their net income."   Act of Mar. 25, 1926, ch. 88, 44 Stat. 223; see n. 3, *supra*.   Respondents argue that this statute not only permitted these forms of taxation of national banks, but that in so doing it also implicitly authorized the taxation of any federal obligations held by national banks, notwithstanding independent limitations placed on taxation of federal obligations.[12]

Although respondents' reading might be a plausible construction of the prior version of § 5219, the prior version need not be so construed.   That version did not mention federal obligations; § 5219 was, and still is, addressed to the concern first considered in *McCulloch* v. *Maryland*, 4 Wheat. 316 (1819), where this Court declared that any tax on the operation of a national bank unconstitutionally burdened this instrumentality of the Federal Government.   The original predecessor of § 5219, § 41 of the 1864 National Bank Act, 13

---

[12] The unenacted phrase "Except as otherwise provided by law," added to the text of Rev. Stat. § 3701 by the codifiers of the United States Code in 1926, see n. 8, *supra*, almost certainly did not refer to § 5219 or its predecessors.   The drafters probably inserted the language as a cross-reference to the Act of Aug. 13, 1894, ch. 281, 28 Stat. 278, which had legislatively overruled *Bank* v. *Supervisors*, 7 Wall. 26 (1869), and modified § 3701 to the extent of removing the exemption from circulating notes and other notes circulating as currency.   See W. McClenon & W. Gilbert, Index to the Federal Statutes 1874–1931, p. 1243 (1933) (listing Act of Aug. 13, 1894, as an implied amendment of Rev. Stat. § 3701).   In the preface to the 1926 edition of the United States Code, at v, it is said: "Acknowledgement of valuable assistance is given to W. H. McClenon. . . ."

Stat. 111, permitted state taxation of national banks only on their real estate and shares; such taxes, *McCulloch* indicated, did not violate the Constitution's protection of national banks. 4 Wheat., at 436–437. But whether a tax imposes an intolerable burden on national banks, and whether it imposes an intolerable burden on federal obligations by threatening to diminish their value, are questions that are historically and analytically distinct. Section 3701 responds to the latter concern, first addressed in *Weston* v. *City Council of Charleston*, 2 Pet. 449 (1829). Congress might well conclude that a tax not imposing an undue burden on national banks does unduly burden federal obligations, and § 5219 and § 3701 have always been directed to, and have protected, these separate federal interests.

A state tax affecting national banks holding federal obligations implicates both federal concerns, and therefore confronts both federal barriers to state taxation. Under the statutory scheme in effect in 1959, the year § 3701 was amended, a tax not satisfying the requirements of § 5219 was invalid whether or not it also satisfied the requirements of § 3701. Compare *Owensboro National Bank* v. *Owensboro*, 173 U. S. 664, 676, 682–683 (1899) (franchise taxation of national bank violated predecessor to § 5219 prior to 1926 amendment of that statute, which permitted for the first time franchise taxes on national banks), with *Provident Institution* v. *Massachusetts*, 6 Wall., at 630–632 (franchise tax on state corporation not unlawful burden on federal obligations). Similarly, there was no reason to believe that a tax that violated § 3701 could be imposed on a bank merely because it did not also violate § 5219. Indeed, while § 5219 explicitly had permitted the levying of an income tax on national banks since 1923, see Act of Mar. 4, 1923, ch. 267, 42 Stat. 1499, it was never contended that this permitted the inclusion of interest from federal obligations in the national banks' taxable income.[13]

---

[13] Inclusion of interest from federal obligations in income for the purposes of state income taxes was prohibited by the pre-1959 version of § 3701, be-

Although it might be inferred from dicta in certain cases that the prior version of § 5219 implicitly authorized a State's refusal to deduct the value of federal obligations from the assessed value of national bank shares, see, *e. g., Cleveland Trust Co.* v. *Lander,* 184 U. S. 111, 115 (1902); *Van Allen* v. *Assessors,* 3 Wall. 573, 584–588 (1866), this implication has not been necessary for any of the Court's decisions in this area. In the context of bank shares taxes, until the 1959 amendment of § 3701 the prohibitions of § 3701 and § 5219 were coextensive. Because they were permitted expressly by § 5219, such taxes did not violate the proscription of taxes on national banks. And regardless of the manner in which a shares tax was computed, it did not violate § 3701 because it was assessed on an interest separate from the federal obligations held by the bank. See, *e. g., Society for Savings* v. *Bowers,* 349 U. S., at 147. There was therefore no cause to consider whether § 5219 implicitly granted powers to burden federal obligations held by national banks that otherwise would have been denied by § 3701.[14]

---

cause the tax was imposed on, rather than being measured by, the interest. The States' inability to include interest from federal obligations in an income tax was the primary reason the predecessor to § 5219 was amended in 1926 to permit the imposition on national banks of nondiscriminatory franchise taxes based on corporate income. See 67 Cong. Rec. 6085 (1926) (remarks of Rep. Wingo); T. Anderson, Federal and State Control of Banking 217–219 (1934).

[14] Thus, we do not "disregar[d]" these cases, as the dissent contends. *Post,* at 874. We simply observe that like the former § 5219 itself these cases were ambiguous about the relationship of § 5219 to taxation of federal obligations and § 3701, and that their results in no way turned on an exception to § 3701 created by § 5219. In *Van Allen* v. *Assessors,* for example, the Court did not state unambiguously, as the dissent implies, *post,* at 875, that § 5219 independently recognized the State's power to tax *federal obligations* "irrespective of § 3701," *post,* at 876, but rather stated that the statute recognized the State's power to tax the shares of *national banks.* See 3 Wall., at 586. The *Van Allen* Court held that a bank shares tax did not illegally tax the United States obligations that constituted the capital of the bank, because the shares were "a distinct independent interest or property, held by the shareholder like any other property that may belong

The prior version of § 5219 thus need not be read as giving implied consent to taxation of federal obligations; on its face it was addressed only to the separate interdiction on taxation of national banks, and it never was necessary to decide whether implicitly it reached further.   The plain language of § 3701, as amended in 1959, therefore need not be seen as an "implied repeal" of the pre-1969 version of § 5219.   The 1959 amendment of § 3701 left § 5219 entirely intact.   All taxes on national banks except those enumerated in § 5219 still were unlawful.   A shares tax on a national bank still was lawful. The 1959 amendment simply limited the ability of States to consider federal obligations when levying *any* form of tax, taxes on national banks included.   States still could reach the value of federal obligations by imposing the other effective form of taxation permitted by § 5219, a franchise tax, which

---

to him."   *Id.*, at 584.   Similarly, in *Cleveland Trust Co.* v. *Lander*, the Court recognized that it was well established that Rev. Stat. § 3701 did not bar a tax on the separate individuality of shareholders.   184 U. S., at 115. And in *Des Moines National Bank* v. *Fairweather*, 263 U. S. 103 (1923), relied upon, *post*, at 876, the Court addressed § 3701's application to a shares tax on national banks and held that "[a]s respects national banks, the rule is the same as with corporations in general": "[t]he difference [between a lawful and an unlawful tax on United States obligations] turns on the distinction between the corporate assets and the shares,—the one belonging to the corporation as an artificial entity and the other to the stockholders," 263 U. S., at 112.   The *Fairweather* Court's reference to *Van Allen*'s ruling as "settled law," 263 U. S., at 114, in context appears to refer principally to this distinction, see *id.*, at 113–115.   Any oblique suggestions in these cases that § 5219 independently defined the States' authority to reach the value of federal obligations held by national banks were wholly superfluous.

Finally, the "firmly embedded" exception to the general rule of immunity of federal obligations from state taxation noted in *Society for Savings* v. *Bowers*, 349 U. S., at 148, was *not* an immunity afforded by § 5219. Cf. *post*, at 876.   Section 5219 was not mentioned in *Bowers*.   The *Bowers* Court referred to an immunity entirely internal to § 3701, one based on "the theory that . . . a tax on the stockholders' interests is not a tax on the federal obligations which are included in the corporate property."   349 U. S., at 147.   The 1959 amendment to § 3701 certainly abolished the relevance of this formalistic theory.

was expressly excepted from the prohibition contained in the amended language of § 3701.

The doctrine disfavoring implied repeals thus is irrelevant for these cases. It does not justify the use of an unnecessary construction of the language of an ambiguous statute that no longer is on the books to defeat the plain language of an effective statute. This is particularly true when, as here, the "impairment" of the prior statute is minimal even if the prior statute is construed so as to maximize its conflict with the later one. See *Andrus* v. *Glover Construction Co.*, 446 U. S., at 618–619. Given its current language, which does not mention or even arguably authorize *any* form of tax, it would be singularly inappropriate for this Court to hold for the first time that § 5219 authorizes the imposition of taxes that otherwise would violate § 3701.[15]

## V

Nothing in the legislative history of the 1959 amendment to § 3701 contradicts its plain language. Nor is the plain language of the amendment inconsistent with any other federal statute. In these circumstances, the plain language of § 3701 is controlling. The judgments of the Texas Court of Civil Appeals are therefore reversed.

*It is so ordered.*

JUSTICE O'CONNOR took no part in the consideration or decision of these cases.

JUSTICE REHNQUIST, with whom JUSTICE STEVENS joins, dissenting.

I agree with the Court that the plain language of the tax exemption for federal obligations, Rev. Stat. § 3701, as

---

[15] Moreover, the Court of Civil Appeals' approach would ascribe to Congress the implausible intention to outlaw consideration of federal obligations in computing all taxes on shareholders, except taxes on shareholders of banks. As discussed above, state taxation of national banks historically has been thought to pose a threat to a federal interest independent of the threat posed by state taxation of federal obligations. Policy and logic suggest that Congress could not have meant to single out national banks for disfavored treatment.

amended, 31 U. S. C. § 742, seems quite broad. *Ante*, at 862. See *Memphis Bank & Trust Co.* v. *Garner*, 459 U. S. 392 (1983). If this general provision is viewed in isolation, then the Court's argument is persuasive that it proscribes the Texas property tax on bank shares at issue in these cases because that tax is computed without any reduction for federal obligations held by state and national banks. *Ante*, at 862–865. I do not believe, however, that we can take such a detached look at § 3701 when this Court has for over 100 years consistently said that a different statute, Rev. Stat. § 5219, as amended, 12 U. S. C. § 548, specifically controls the question presented here. Since today the Court disregards these precedents, I dissent.

An entire chapter of American legal history is occupied by efforts to establish different versions of what may be loosely referred to as "national banks." This chapter is of course reflected in the decisions of this Court, where in a series of early cases the Court consistently determined that it was Congress' intention to protect the National Bank from taxation by the States. See *McCulloch* v. *Maryland,* 4 Wheat. 316 (1819); *Osborn* v. *Bank of United States,* 9 Wheat. 738 (1824). Somewhat later the Court decided that States could not tax United States securities when those securities were owned by state banks. *New York ex rel. Bank of Commerce* v. *Commissioners of Taxes of New York City,* 2 Black 620 (1863); *Bank Tax Case,* 2 Wall. 200 (1865).

In *Van Allen* v. *Assessors,* 3 Wall. 573, 582 (1866), the Court was asked to decide "whether the State possesses the power to authorize the taxation of the shares of these national banks in the hands of stockholders, whose capital is wholly vested in stock and bonds of the United States?" It was argued that the predecessor of § 3701 ensured an exemption to such a tax by providing that "all stocks, bonds, and other securities of the United States held by individuals, corporations, or associations, within the United States, shall be exempt from taxation by or under State authority."

Act of Feb. 25, 1862, ch. 33, § 2, 12 Stat. 346. 3 Wall., at 578.

While the Court did not address this argument in so many words, it implicitly rejected the contention by turning instead to the forerunner of § 5219, a more specific statute which provided that nothing in the National Bank Act "shall be construed to prevent all the shares in any of the said associations, held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation in the assessment of taxes imposed by or under State authority. . . ." Act of June 3, 1864, ch. 106, § 41, 13 Stat. 112. The Court held that this provision recognizes "in express terms, the sovereign right of the State to tax" bank shares without a reduction for United States obligations. 3 Wall., at 586. "Nothing, it would seem, could be made plainer, or more direct and comprehensive on the subject. The language of the several provisions is so explicit and positive as scarcely to call for judicial construction." *Ibid.* See also *National Bank* v. *Commonwealth*, 9 Wall. 353, 359 (1869).

In 1878 Congress revised the statutes and enacted § 3701 and § 5219. Section 5219 was virtually identical to its immediate predecessor. The language of the exemption in § 3701 was somewhat changed to provide: "All stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local atuhority." In *Cleveland Trust Co.* v. *Lander*, 184 U. S. 111 (1902), an Ohio trust company, relying on § 3701, made an argument similar to the one made in *Van Allen*. The Court reaffirmed its *Van Allen* decision and this time expressly rejected the § 3701 claim of exemption. The Court explained:

> "The argument of the plaintiff in error claims a greater immunity from taxation for the shares of the Trust Company than section 5219 of the Revised Statutes of the United States gives to shares in national banks. That

section permits the States to assess and tax the shares of shareholders in national banks. . . . In *Van Allen* v. *The Assessors*, 3 Wall. 573, the provision contained in section 5219—then a part of the act of Congress of June 3, 1864—came up for consideration. . . . The validity of the statute was sustained, and interpreting it the court said that it authorized the taxation of such shares, and shares were defined to be the whole interest of the holder without diminution on account of the kind of property which constituted the capital stock of the bank. Of the provisions of the act expressing this purpose and the right of the State to tax the court said nothing 'could be made plainer or more direct and comprehensive.' . . . The answer to the contention [that § 3701 requires a different result] is obvious and may be brief. The contention destroys the separate individuality recognized, as we have seen, by this court, of the trust company and its shareholders, and seeks to nullify one provision of the Revised Statutes of the United States (section 5219) by another (section 3701), between which there is no want of harmony." 184 U. S., at 113–115.

Thus, after *Van Allen* and *Cleveland Trust Co.* it was clear that, irrespective of § 3701, § 5219 authorized States to tax bank shares without excluding the value of the bank's capital vested in federal obligations. By 1923 the Court said that this principle "is now settled law in this court." *Des Moines National Bank* v. *Fairweather*, 263 U. S. 103, 114 (1923). And in *Society for Savings* v. *Bowers*, 349 U. S. 143, 148 (1955), Justice Harlan, writing for the Court, explained that "this exception to the general rule of immunity is firmly embedded in the law." *

---

*The Court attempts to avoid this line of cases by suggesting that almost everything said in several of these decisions was either "dicta," *ante*, at 871, or "ambiguous," *ante*, at 871, n. 14. Neither characterization can be

As the Court points out, in 1959 Congress amended § 3701 with broad language. *Ante*, at 858–859, and n. 1. But the *Van Allen* decision rested exclusively on § 5219 and permits a tax on bank shares regardless of § 3701 unless there is some indication that with the 1959 amendment to § 3701 Congress intended to repeal part of § 5219. Sensible meaning can be given to the amended § 3701 without finding a repeal by implication, and there is nothing in the language or history of the amendment to indicate a repeal by implication. In fact, the history of the amendment indicates that Congress did not intend to change the exemption; Congress amended § 3701 to make clear that an Idaho tax on interest earned on federal obligations ran afoul of the exemption. See S. Rep. No. 909, 86th Cong., 1st Sess. (1959); H. R. Rep. No. 1148, 86th Cong., 1st Sess. (1959).

---

plausibly made concerning the holding in *Cleveland Trust Co.* v. *Lander*, 184 U. S. 111, 115 (1902), where the Court rejected the argument accepted by the Court today by saying that "the trust company . . . seeks to nullify one provision of the Revised Statutes of the United States (section 5219) by another (section 3701), between which there is no want of harmony." Likewise, as noted above, while *Van Allen* v. *Assessors*, 3 Wall. 573 (1866), did not expressly reject this argument, reliance on the predecessor of § 3701 was argued and the Court necessarily rejected it by basing its holding on § 5219.

I cannot agree with the Court's suggestion that the *Van Allen* and *Cleveland Trust Co.* decisions were not approved in later cases such as *Society for Savings* v. *Bowers*. Certainly, by the time *Society for Savings* was decided, the *Van Allen* doctrine had been carried beyond § 5219 to shares taxes on corporations other than banks. 349 U. S., at 147–148. The Court concludes that "[t]he 1959 amendment to § 3701 certainly abolished the relevance of this formalistic theory" with regard to nonbank corporations. *Ante*, at 872, n. 14. To the contrary, in light of the legislative history discussed in the text concerning the 1959 amendment, it is at a minimum debatable whether a shares tax without a reduction for federal obligations on any corporation is prohibited by § 3701. But that is another case; these cases present essentially the same issue presented in *Van Allen* and *Cleveland Trust Co.*, and like those decisions, we need go no further than § 5219 to decide it.

The Court does not contend otherwise, recognizing that "'repeals by implication are not favored.'" *Ante*, at 868 (quoting *Posadas* v. *National City Bank*, 296 U. S. 497, 503 (1936)). The Court says, however, that the "doctrine disfavoring implied repeals . . . is irrelevant for these cases," *ante*, at 873, because "at the time the taxes at issue were assessed, § 5219 was clearly capable of coexistence with the plain language of § 3701 as amended in 1959, and there is no justification for construing § 5219 to create an inconsistency," *ante*, at 868. Ten years after § 3701 was amended, § 5219 also was amended. The latter section now provides: "For the purposes of any tax law enacted under authority of the United States or any State, a national bank shall be treated as a bank organized and existing under the laws of the State or other jurisdiction within which its principal office is located."

Contrary to the Court's suggestion otherwise, the legislative history of the 1969 amendment indicates that the new provision in § 5219 was intended to extend the power of States to tax national banks; not to limit their power to tax bank shares. See 115 Cong. Rec. 38634 (1969) (remarks of Sen. Tower); *id.*, at 35399 (remarks of Sen. Proxmire). As the Senate Report clearly provided, the "broad statement of the law" now found in § 5219 is intended to express Congress' conclusion that "there is no longer any justification for Congress continuing to grant national banks immunities from State taxation which are not afforded State banks." S. Rep. No. 91–530, p. 2 (1969).

As noted above, the construction given to § 5219 in *Van Allen* and its progeny is now "firmly embedded in the law." *Society for Savings* v. *Bowers, supra,* at 148. We are not therefore, as the Court seems to believe, writing on a clean slate. As the Court said in *Ozawa* v. *United States,* 260 U. S. 178, 194 (1922):

> "We are asked to conclude that Congress, without the consideration or recommendation of any committee, without a suggestion as to the effect, or a word of debate

as to the desirability, of so fundamental a change, . . . has radically modified a statute always theretofore maintained and considered as of great importance. It is inconceivable that a rule . . . , a part of our history as well as our law, welded into the structure of our national policy by a century of legislative and administrative acts and judicial decisions, would have been deprived of its force in such dubious and casual fashion."

Since the Court can point to nothing in the amendment to § 5219 which indicates that Congress intended to change the *Van Allen* rule and since there is no basis for finding that Congress repealed the rule by implication when it amended § 3701, I would affirm the decision of the Texas Court of Appeals.