# IN THE OREGON TAX COURT

## Eilert R. and Sally S. BORG
*v.*
## DEPARTMENT OF REVENUE
### (TC 2410)

Leo A. Reinikka, Tamblyn & Bush, Portland, represented plaintiffs.

Ted E. Barbera, Senior Assistant Attorney General, Department of Justice, Tax Section, Salem, represented defendant.

Decision part for plaintiffs, part for defendant rendered August 12, 1988.

### CARL N. BYERS, Judge.

The Department of Revenue assessed additional income tax against the plaintiffs for the tax years 1981 and 1982 and the plaintiffs appeal. The parties stipulated to the facts and submitted this case to the court on briefs.

During the years in question, plaintiffs received interest income from a mutual fund in which they held shares. The mutual fund, an open-end, no-load fund, is organized in the form of a Massachusetts business trust.

"During 1981 and 1982, the Mutual Fund's investments included (1) obligations of the United States Government; (2) other obligations insured or guaranteed by the United States Government; (3) certificates of deposit; and (4) repurchase agreements." (Stip. ¶ 10, at 3.)

The trust makes it possible for investors to invest in government securities and other obligations in smaller denominations than sold in the marketplace.

The trust qualifies as a regulated investment company under subchapter M of the Internal Revenue Code. This means that the trust is not taxable as an entity and that the beneficiaries are taxable on their share of the income earned.

The basic issue in this case is whether the tax exempt character of income in the hands of the trust flows through and remains exempt in the hands of the beneficiaries. Secondary issues relate to the tax status of different kinds of income received by the trust.

*United States Obligations.*

■ Although obligations of the U. S. Government and income derived therefrom are exempt from state taxation by virtue of the U. S. Constitution, Congress also enacted legislation specifically and expressly exempting federal obligations. 31 USC § 3124(a) provides as follows:

"Stocks and obligations of the United States Government are exempt from taxation by a state or political subdivision of a state. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except

"(1) a nondiscriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation; and

"(2)    an estate or inheritance tax."

■    Under an earlier version of the statute, the United States Supreme Court construed the statute to prohibit the states from directly taxing such obligations but held that the states could impose a nondiscriminatory tax on separate property interests. *Society For Sav. v. Bowers,* 349 US 143, 75 S Ct 607, 99 L Ed 950 (1955). However, after the statute was amended in 1959 to its present form, the Supreme Court struck down a Texas tax on bank shares which was measured by the bank's net assets without deduction for federal obligations it held. *American Bank & Trust Co. v. Dallas County,* 463 US 855, 103 S Ct 3369, 77 L Ed 2d 1072 (1983). In doing so, the court indicated that the legislative intent was to discard the court's old formalistic test and look instead to whether the "federal obligations must be considered, either directly or indirectly, in computing the tax." *Id.,* at 862. In this case, Oregon seeks to impose its tax on the income received by the shareholders of the mutual fund. Computation of Oregon's income tax does not consider the federal obligations, but it does consider the income from those federal obligations. Thus, that income will be exempt from tax by Oregon if the exemption is not lost by passing through the trust.

Plaintiffs maintain that as a Massachusetts business trust, the tax exempt character of the income in the hands of the trust is retained when passed through to the shareholders. This court agrees, as have a number of other state courts. *See Andras v. Illinois Dept. of Rev.,* 154 Ill App 3rd 37, 506 NE2d 439 (1987), *cert den* 485 US 960, 108 S Ct 1223, 99 L Ed 2d 424 (1988); *Matz v. Dept. of Treas.,* 155 Mich App 778, 401 NW2d 62 (1986); *Comm. of Rev. v. Plymouth Home National Bank,* 394 Mass 66, 473 NE2d 1139 (1985). As the court found in *Brown v. Franchise Tax Board,* 242 Cal Rptr 810, 812 (Cal Ct App 1987):

"The distributions companies pay to their investors must be considered as so closely identified with their source that the computation of the tax involves indirect consideration of federal obligations."

*Obligations Insured Or Guaranteed By United States.*

■    This court finds that to the extent a portion of plaintiffs' interest income is from "federal obligations," that portion is exempt from state income tax. It should be noted that

interest income from obligations which are only insured or guaranteed by the United States government is not exempt from state income tax. These kinds of securities, specifically those issued by the Government National Mortgage Association (GNMA), have been found to be neither direct nor certain obligations of the United States. The issuer of such certificates bears the primary obligation to make timely payments. The United States' obligation is secondary and contingent. "The United States is the guarantor — not the obligor." *Rockford Life Ins. Co. v. Ill. Dept. of Rev.*, 482 US 182, 107 S Ct 2312, 96 L Ed 2d 152, 159 (1987). Therefore, obligations guaranteed by the United States are not "obligations of the United States" within the statutory exemption.

*Repurchase Agreements.*

The tax status of income earned by the trust from the repurchase agreements is not so clear. The facts dealing with this issue may be best described by quoting the stipulation of the parties:

"11.

"A 'repurchase transaction' is a transaction that takes place between an organization such as a trust like the Mutual Fund and a bank or brokerage firm, where specific U.S. government obligations are acquired and, simultaneously with the agreement to acquire them, there is a corresponding agreement to resell them after the expiration of a given period of time at a specified price.

"* * * * *

"13.

"The Mutual Fund invests in U.S. Government securities directly and through repurchase agreements. The repurchase agreements provide that the intent of the parties is that the transaction be considered as a sale. [Ex A, para. 18]. Actual delivery is taken of the securities through the Federal Reserve book entry system. There is no promissory note executed in connection with the repurchase agreement, nor is there any indebtedness on behalf of the Mutual Fund to the seller of the federal securities under the repurchase agreement. The sales price of the securities is the market value on the date of the repurchase agreement.

"14.

"The repurchase agreement used by the Mutual Fund is

substantially the same as that used in the general trade in U.S. Government securities."

The specific question to be answered is whether interest income received under the repurchase agreements is income from a federal obligation. In passing on this same issue, the Illinois court in *Andras v. Illinois Dept. of Rev.,* 154 Ill App 3rd 37, 506 NE2d 439, 443 (1987), *cert den* 485 US 960, 108 S Ct 1223, 99 L Ed 2d 424 (1988), looked to the federal income tax treatment of state obligations for a rationale. The court found that under the federal income tax laws the exemption for:

> "[I]ncome received from State or municipal obligations (26 USC § 103(a)(1954)) is available only to the taxpayer who actually owns the securities - i.e., the taxpayer who has the right to dispose of them and who bears the risk of a profit or loss."

The Illinois court concluded that as to repurchase agreements, the trust was not the true owner but merely loaned the "seller" money for which the trust was paid interest.

That analysis appears correct. Heeding the Supreme Court's admonition that the test to be applied under § 3124(a) is not a formalistic test but rather one of economic substance, the rationale applied in *Andras* meets that test. It is not the holding of legal title that controls, but rather who stands to gain or lose as the federal securities trade in the marketplace. Under that test, the "seller" is the true owner and the mutual fund merely receives interest under a contract with the seller. Such interest is not tax exempt.

It is appropriate to address defendant's arguments as to intergovernmental tax immunity. Defendant appears to argue that the reach of § 3124(a) is limited by the current doctrine of intergovernmental tax immunity. The court acknowledges that there is substantial tension, if not outright opposition, between § 3124(a) and the intergovernmental tax immunity doctrine. Put succinctly, § 3124(a)[1] was intended by Congress:

---

[1] Although § 3124(a) of Title 31 replaced 31 USC § 742 in 1982, the intent of the statute has not changed. *See Smith v. Davis,* 323 US 111, 65 S Ct 157, 89 L Ed 112 (1944).

"('[T]o prevent taxes which diminish in the slightest degree the market value or the investment attractiveness of obligations issued by the United States in an effort to secure necessary credit.')" *Memphis Bank & Trust Co. v. Garner,* 459 US 392, 396, 103 S Ct 692, 74 L Ed 2d 562 (1983).

The doctrine of intergovernmental tax immunity on the other hand, as expressed by the same court in *South Carolina v. Baker,* 485 US 505, 108 S Ct 1355, 99 L Ed 2d 592, 611 (1988), is:

"We see no constitutional reason for treating persons who receive interest on government bonds differently than persons who receive income from other types of contracts with the government, and no tenable rationale for distinguishing the costs imposed on States by a tax on state bond interest from the costs imposed by a tax on the income from any other state contract."

Earlier, the court summarizes its view as follows:

"In sum, then, under current intergovernmental tax immunity doctrine the states can never tax the United States directly but can tax any private parties with whom it does business, even though the financial burden falls on the United States, as long as the tax does not discriminate against the United States or those with whom it deals." (Citations omitted.)

It is not necessary in this case to resolve the dilemma since the intergovernmental tax immunity doctrine applies only to nondiscriminatory taxes. Oregon's personal income tax, which exempts state obligations but taxes federal obligations, is considered discriminatory. *Memphis Bank & Trust Co. v. Garner, supra.*

In finding that such portion of plaintiffs' income as is attributable to federal obligations is exempt from Oregon income tax, it should be clear that the converse is true; *i.e.,* those portions not attributable to exempt federal obligations are subject to Oregon income tax.

The parties have stipulated that:

"The income generated from ownership of each share of the Mutual Fund, in general, and from the shares owned by Plaintiffs, in particular, was each share's proportionate fractional share of the total income realized from the underlying securities and obligations owned by the Mutual Fund, after

deducting the transaction expenses and administrative costs associated with the purchase, sale and management of the U. S. obligations."

The parties have likewise stipulated in paragraphs 28 and 29 as to the specific percentages of income attributable to federal obligations. These percentages should be used in allocating that portion of the income received by plaintiffs which is exempt from Oregon income tax.

Defendant shall recalculate plaintiffs' income tax liabilities in accordance with this opinion. Defendant shall submit such recalculated liabilities, with the calculations, to the court and plaintiffs shall have ten (10) days thereafter to file any objections. Costs to neither party.