PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 97-6903
_____

D.C. Docket No. 97-37-N

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
04/20/99
THOMAS  K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff- Appellee,

versus

MICHAEL JON HUNTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(April 20, 1999)**

Before HATCHETT, Chief Judge, and  CARNES, Circuit Judge, and FARRIS*, Senior Circuit Judge.

FARRIS, Senior Circuit Judge:

## Background

Michael Jon Hunter was convicted of four counts of possession of narcotics with intent to distribute in violation of 21 U.S.C.  § 841(a)(1).  He pled guilty and was sentenced to 57 months in prison.

---

*Honorable Jerome Farris, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

Hunter was arrested after selling several grams of amphetamine to a confidential informant of the Prattville, Alabama Police Department. The transaction took place from Hunter's automobile, where he was arrested while preparing to inject himself with a controlled substance. A subsequent search of the automobile yielded significant quantities of drugs, cash, and records of drug transactions. Two days later, authorities searched Hunter's home, which was located almost 100 miles away from the scene of the arrest. This search yielded no drugs, but hundreds of plastic baggies, over a hundred glass vials, mixing spoons, diluting agents, transaction records, and five firearms were recovered. As a result, Hunter was also charged with being a felon in possession of a firearm.

The sentencing court found that the evidence recovered from Hunter's home demonstrated he was engaging in drug trafficking from his home, and such conduct was relevant to sentencing. United States v. Hunter, 980 F. Supp. 1439, 1445-47 (M.D. Ala. 1997). The court concluded it could group the four drug charges with the gun charge under U.S.S.G. § 3D1.2, which provides that "[a]ll counts involving substantially the same harm shall be grouped together." Multiple counts involve substantially the same harm "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." U.S.S.G. § 3S1.2(c). A firearm is a specific offense characteristic of a drug count under § 2D1.1(b)(1). Since the gun in the instant case was found 100 miles from the scene of the conduct for which Hunter was charged, we must decide whether that gun involves substantially the same harm as the other charges. Hunter challenges only the propriety of grouping these counts, which led to his sentence of 57 months.

**Discussion**

The district court's findings of fact are reviewed for clear error, and its conclusions of law, including application of the sentencing guidelines, are reviewed de novo. United States v. Smith, 127 F.3d 1388, 1389 (11th Cir. 1997).

Specific offense characteristic enhancements under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm are statutorily proper "[i]f a dangerous weapon was possessed." There are two recent Eleventh Circuit cases discussing "possession" in this context. In United States v. Cooper, 111 F.3d 845 (11th Cir. 1997), the defendant was charged with drug trafficking offenses based on drugs found in a warehouse. Id. at 846. When police searched Cooper's house several miles from the warehouse, they found cash, a key to the warehouse, a suitcase similar to that in which the drugs were stored, and two guns. Id. We vacated a district court determination that the firearms were possessed in relation to the drug offense and stated that "§ 2D1.1(b)(1) requires the government to show by a preponderance of the evidence that the firearm was present at the site of the charged conduct." Id. at 847 (citing United States v. Hall, 46 F.3d 62, 63 (11th Cir. 1995)). Since the weapons were found at Cooper's home, not "at the site of the offense conduct as required by § 2D1.1(b)(1) and its commentary," the enhancement was improper. Id. at 847.

We decided the second case, United States v. Smith, 127 F.3d 1388 (11th Cir. 1997), subsequent to Hunter's sentencing. In Smith, we found that a firearm enhancement is "authorized if the weapon was possessed during the offense of conviction *or during related relevant conduct*." Id. at 1390 (emphasis added). We further held "that the enhancement is to be applied whenever a firearm is possessed during conduct relevant to the offense of conviction."

3

Id. (citing authority from the Second, Fourth, Fifth, Seventh, and Tenth Circuits). Smith had sold cocaine to an informant and been observed obtaining the drug from a metal cabinet. Id. at 1389. Several weeks after the sale for which he was indicted, Smith was again observed retrieving drugs from the cabinet and was arrested after driving away. Id. He had a loaded gun on the car seat next to him and cocaine in a bag. Id. We considered this "relevant conduct" to the charged offense and applied a firearm enhancement. Id. at 1390. We factually distinguished Cooper by noting that Smith had the firearm with him when he was arrested whereas in Cooper the firearm was neither on the defendant's person nor found in proximity to the drugs. Id. at 1390 n.1.

Despite arguable inconsistencies, Cooper and Smith yield consistent holdings. In Cooper, we stated that an enhancement is proper where the firearm was "present at the site of the charged conduct." Cooper, 111 F.3d at 847 (citing United States v. Hall, 46 F.3d 62, 63 (11th Cir. 1995). Recognizing the 1991 Sentencing Guideline amendment deleting the restriction that the weapon must be possessed during the offense of conviction, we recently clarified our statement from Cooper. In Smith, we found that a firearm enhancement is "to be applied whenever a firearm is possessed during conduct relevant to the offense of conviction." Smith, 127 F.3d at 1390 (citing authority from the Second, Fourth, Fifth, Seventh, and Tenth Circuits). We therefore clarified that "site of the charged conduct" includes conduct relevant to the offense of conviction, that is, acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." Id. (citing U.S.S.G. § 1B1.3(a)(2)).

Although decided prior to Smith, the sentence imposed by the district court is consistent with these holdings. The district court found that in Cooper, unlike the instant case, the Eleventh

4

Circuit was not required to reach the question of whether relevant conduct occurring where the weapons were found could support an enhancement of the drug offense because it characterized the suitcase, cash, and warehouse key as insufficient evidence of drug transactions in the home. Hunter, 980 F. Supp at 1486. In contrast, it found the paraphernalia recovered from Hunter's home to be sufficient evidence of conduct related to the offense of conviction. Id. This is in line with our holding in Smith.

There was ample evidence in the instant case for the district court to conclude that the drug paraphernalia found in Hunter's home was part of the same course of conduct (i.e. possession with intent to distribute) for which he was charged and convicted. Its statements as to the enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) were proper.

AFFIRMED.

CARNES, Circuit Judge, concurring:

The opinion in United States v. Cooper, 111 F.3d 845, 847 (11th Cir. 1997), says that "§ 2D1.1(b)(1) requires the government to show by a preponderance of the evidence that the firearm was present at the site of the charged conduct." The government did not and could not show that in this case, yet the district court applied the § 2D1.1(b)(1) dangerous weapon enhancement. If the quoted language from the Cooper opinion was a holding, we would be required to vacate the sentence in this case and remand for resentencing without the enhancement.

We would be required to do that, because under our circuit's operating law, we must follow the holding of a prior panel even if we believe it is wrong. See, e.g., Wascura v. Carver, No. 98-4124, (11th Cir. Mar. 9, 1999)(noting that we had no occasion to pass on a party's criticism of a prior panel's decision, because "we are bound by the [prior] decision regardless of whether we agree with it"); United States v. Steele, 147 F.3d 1316, 1317 - 18 (11th Cir. 1998) ("Under our prior panel precedent rule, a panel cannot overrule a prior one's holding even though convinced it is wrong.").

But while the prior precedent rule requires us to follow the holding of an earlier decision, it does not require us to follow the language of the accompanying opinion that is unnecessary to the decision, i.e., we are not required to follow

dicta.  See, e.g.,  McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1077 (11th Cir. 1996) ("we are not required to follow dicta  contained in our own precedents"); Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller, 957 F.2d 1575, 1578 (11th Cir. 1992)(what is said in a prior opinion about a question not presented there is dicta, and dicta is not binding precedent, so a later panel is "free to give that question fresh consideration"); see also  McDonald's Corp. v. Robertson, 147 F.3d 1301, 1315(11th Cir. 1998)(Carnes, J., concurring) (explaining why "dicta in our opinions is not binding on anyone for any purpose").  The question, then, is what is the Cooper holding, and what is merely dicta. More specifically, the question is did Cooper hold that possession of a dangerous weapon during relevant conduct away from the site of the offense conduct could not support a § 2D1.1(b)(1) dangerous weapon enhancement?

The answer is  Cooper did not  and  could not have held that, because the issue was not presented by the facts in Cooper.  The holdings of a prior decision can reach only as far as the facts and circumstances presented to the Court in the case which produced that decision. There was no proof  the weapons found away from the site of the charged conduct in Cooper were  possessed during relevant conduct, so the panel in that case did not have before it the issue of whether possession during relevant conduct could satisfy § 2D1.1(b)(1).  It is true that the

7

<u>Cooper</u> opinion says that the possession must be at the site of the charged conduct for the enhancement to be applicable, and that statement certainly implies possession off-site during relevant conduct is insufficient. But that implication is only dicta, because it is not necessary to the result the Court reached in the case. <u>See, e.g.</u>, <u>American Bank and Trust Co. v. Dallas County</u>, 463 U.S. 855, 871, 103 S.Ct. 3369, 3379 (1983)(statements in an opinion not necessary to the decision of the case are dicta); <u>United States v. Eggersdorf</u>, 126 F.3d 1318, 1322 n.4 (11th Cir. 1997) (language in an opinion "not necessary to deciding the case then before us" is dicta). Because any statement or implication in <u>Cooper</u> about possession during off-site relevant conduct is dicta, we are "free to give that question fresh consideration," <u>Great Lakes Dredge & Dock Co.</u>, 957 F.2d at 1578.[**]

Giving the question fresh consideration, I agree with the majority that possession of a dangerous weapon during relevant conduct is sufficient for § 2D1.1(b)(1) purposes, even when the weapon was not also possessed at the site of the charged conduct. By so holding, we give meaning to the 1991 amendment to the guidelines that deleted from § 2D1.1(b)(1) the requirement the weapon be

---

[**]The opinion in <u>Cooper</u> cites identical language from <u>United States v. Hall</u>, 46 F.3d 62, 63 (11th Cir. 1995), but that earlier language is itself dicta insofar as the present issue is concerned, because the firearm in <u>Hall</u> was at the site of the charged conduct. Two layers of dicta cannot do what one does not – bind a later panel.

8

possessed during the offense of conviction, see United States v. Smith, 127 F.3d 1388, 1389 - 90 (11th Cir. 1997)(discussing Amendment No. 394 and its effect), and we align ourselves with the at least six other circuits that have reached the same conclusion, see David v. United States, 134 F.3d 470, 476 - 77 (1st Cir. 1998); United States v. Wetwattana, 94 F.3d 280, 284 n. 6 (7th Cir.1996); United States v. Ortega, 94 F.3d 764, 767-68 (2d Cir.1996); United States v. Vital, 68 F.3d 114, 119 (5th Cir.1995); United States v. Roederer, 11 F.3d 973, 982 (10th Cir.1993); United States v. Falesbork, 5 F.3d 715, 721 (4th Cir.1993); United States v. Willard, 919 F.2d 606, 609 - 10 (9th Cir. 1990).