

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 22, 1992

Honorable John Sharp
Comptroller of Public Accounts
State of Texas
L. B. J. State Office Building
111 East 7th Street
Austin, Texas 78774

Opinion No. DM 192

Re: Refund of franchise tax collections to banking corporations, and related questions (RQ-2127)

Dear Mr. Sharp:

You have asked several questions concerning refunds of franchise tax owed to banking corporations or their successors. The franchise tax was first imposed on banking corporations in 1985, after the United States Supreme Court invalidated the method used by most Texas jurisdictions to value bank stock for purposes of ad valorem taxation. *See American Bank & Trust Co. v. Dallas County*, 463 U.S. 855 (1983). To replace the ad valorem tax revenues lost to local taxing units as a result of this decision, the legislature lifted the ad valorem tax from banking corporations and subjected them to the franchise tax imposed by chapter 171 of the Tax Code. Acts 1984, 68th Leg., 2d C.S., ch. 31, art. 3, pt. B, § 1, at 212 (repealing Tax Code § 171.078, which had exempted banking corporations from the franchise tax). The same enactment established the local government corporate banking franchise tax fund, to which revenues from the franchise tax on banking corporations were to be deposited, for allocation to local taxing units. *Id.* § 8, at 213-14 (formerly codified at V.T.C.S. art. 4366e (1925); recodified as Gov't Code § 403.105). The provision establishing the local government corporate franchise tax fund, which had been codified as section 403.105 of the Government Code, was repealed in 1991. Acts 1991, 72d Leg., 1st C.S., ch. 5, § 8.24.[1] In the same enactment, the legislature amended section 171.401 of the Tax Code to require the deposit of all franchise tax revenues in the general revenue fund. *Id.* § 8.231.

After banks became subject to the franchise tax, a series of judicial decisions adverse to the state on application of the franchise tax to other kinds of corporations required extensive tax refunds and credits. *See, e.g., State v. Sun Ref. & Mktg., Inc.*, 740 S.W.2d 552 (Tex. App.--Austin 1987, writ denied); *Bullock v. Sage Energy Co.*, 728

---

[1]Although former section 403.105 of the Government Code has been repealed, for brevity we will refer to this provision by the Government Code citation, rather than by citing the session law that adopted it.

S.W.2d 465 (Tex. App.--Austin 1987, writ ref'd n.r.e.).[2]  Because the adverse franchise tax decisions apply to banking corporations in the same manner that they apply to the other corporations, your office has determined that banking corporations are entitled to substantial tax refunds or credits against future taxes.  Most of your questions relate to the tax refunds or credits; however, you first ask whether the provisions authorizing the distribution of franchise tax revenues to local taxing units are consistent with article III, sections 50 and 51 of the Texas Constitution.

Article III, section 51 of the Texas Constitution, provides in part:

> The Legislature shall have no power to make any grant . . . of public moneys to any individual, association of individuals, municipal or other corporations whatsoever . . . .

*See also* Tex. Const. art. III, § 50 (prohibits loan of the state's credit "to any person, association, or corporation, whether municipal or other . . .").

You ask whether these provisions are violated by the disbursement to local taxing units of the state franchise tax imposed on banking corporations.  As already pointed out, section 403.105 of the Government Code, the provision that formerly authorized this disposition of the franchise tax revenues, has been repealed.  Acts 1991, 72d Leg., 1st C.S., ch. 5, § 8.24.  Thus, your question is relevant only to distributions of the tax that were made in the past.

Sections 50 and 51 of article III prohibit the legislature from making gratuitous donations to individuals, associations, and all kinds of corporations, including municipal and political corporations.  *Road Dist. No. 4, Shelby County v. Allred,* 68 S.W.2d 164 (Tex. 1934).  However, they do not deny the legislature the power to use state funds for governmental purposes.  *State v. City of Austin,* 331 S.W.2d 737 (Tex. 1960).  The state may allocate state funds to political subdivisions to use in carrying out duties that properly rest on the state.  *Jefferson County v. Board of County & Dist. Road Indebtedness,* 182 S.W.2d 908 (Tex. 1944); *see also San Antonio River Auth. v. Shepperd,* 299 S.W.2d 920 (Tex. 1957).  Franchise tax revenues distributed to taxing units[3] under section 403.105

---

[2]The franchise tax is imposed on the value of the privilege of transacting business in Texas, *Bullock v. National Bancshares Corp.,* 584 S.W.2d 268 (Tex. 1979), and is based upon the corporation's taxable capital.  Tax Code §§ 171.002, 171.101.  The cases, taken together, held that the comptroller's method for determining what constituted taxable capital was incorrect.

[3]"Taxing unit" means a county, incorporated city, school district, county education district, a special district or authority (such as a hospital district, a water district, or fire prevention district), or any other political unit of the state that imposes ad valorem taxes on property.  Gov't Code § 403.105(n)(2); Tax Code § 1.04(12).

could be used "only by the taxing unit and only for public purposes." Gov't Code § 403.105(i). The statute set out specific purposes for which municipalities, counties, and school districts each could use the funds, purposes which were proper for the state as well as the local taxing unit to carry out.[4] For example, former section 403.105(j) provided that franchise tax revenues distributed to a municipality could be used only for the following purposes:

> (1) payment of salaries and benefits of municipal law enforcement officers having a duty to enforce or engaged in the enforcement of state law;

> (2) payment of salaries and benefits to municipal firefighters having a duty to protect or engaged in the protection of state or county property, including public roadways and rights-of-way for public roadways;

> (3) purchase of law enforcement and fire-fighting equipment reasonably related to the services provided to the state under Subdivisions (1) and (2);

> (4) acquisition of rights-of-way for, and the construction and maintenance of, municipal streets that provide access to and departure from the state highway system;

> (5) provision of health protection services, including the removal and disposition of hazardous and solid wastes, and disease prevention services; and

> (6) protection of the public safety through the adoption and enforcement of building codes.

*Id.* § 403.105(j); *see also id.* § 403.105(k) (school districts may use money to compensate employees and to maintain schools and school district property), (l) (counties may use money to compensate law enforcement personnel involved in enforcing state law). In our opinion, the disbursement of franchise tax revenues to local taxing units pursuant to section 403.105 of the Government Code did not violate article III, section 51 of the Texas Constitution.

---

[4]Money distributed to taxing units other than municipalities, school districts, or counties could be used "only for public purposes and to promote the general health, safety, and welfare of citizens of this state." Gov't Code § 403.105(m). With respect to this category of taxing units, it is necessary to consult the provisions governing each taxing unit to establish its public purpose or purposes.

We will next address your third, fourth, fifth, and sixth questions,[5] which concern the sources of statutory authority for refunding overpayments of franchise taxes to banks. You ask how to reconcile the comptroller's general authority to give refunds under section 111.104 of the Tax Code with the authority under subsections (e) and (o) of section 403.105 of the Government Code to give credits and make refunds from the local government corporate banking franchise tax fund. Section 111.104 of the Tax Code, which provides for tax credits and refunds, states in part:

> (a) If the comptroller finds that an amount of tax, penalty, or interest has been unlawfully or erroneously collected, the comptroller shall credit the amount against any other amount when due and payable by the taxpayer from whom the amount was collected. The remainder of the amount, if any, may be refunded to the taxpayer from money appropriated for tax refund purposes.
>
> . . . .
>
> (e) *This section applies to all taxes and license fees collected or administered by the comptroller.* [Emphasis added.]

Former section 403.105 of the Government Code created the "local government corporate banking franchise tax fund" in the state treasury. Gov't Code § 403.105(a). Subsection (e) of section 403.105 required the comptroller to send each taxing unit its share of the banking corporation franchise tax. It further provided in part as follows:

> The comptroller may retain in the local government corporate banking franchise tax fund a portion not to exceed five percent of each taxing unit's share and *may use this amount to make refunds of overpayments made to the fund* and redeem dishonored checks and drafts deposited to the credit of the fund. [Emphasis added.][6]

This quoted language of former section 403.105(e) shows that a refund from the local government corporate banking franchise tax fund was one legal remedy available to a banking corporation in the event of an overpayment of franchise taxes.

---

[5]We will address the second question, which concerns the funds in the treasury from which refunds might be made, after addressing the statutory authority for refunding franchise tax collected from banks.

[6]Since subsection 403.105(e) of the Government Code has been repealed, all franchise tax collections are now placed in the state treasury. Tax Code § 171.401.

Subsection (o) of section 403.105 of the Government Code provided in part:

> Should it be determined that taxes assessed under Chapter 171, Tax Code, have been unlawfully or erroneously collected from a banking corporation (or its predecessor by merger, consolidation, or transfer of assets), then *the banking corporation may . . . make an irrevocable election to either (i) pursue legal remedies other than taking credits against current or future taxes; or (ii) file with the comptroller a claim for a credit for all amounts unlawfully or erroneously collected against current or future taxes payable by the banking corporation under Chapter 171, Tax Code.* The comptroller shall, on behalf of the state and the taxing units, receive and administer all such claims for credit filed by banking corporations for taxes assessed against banking corporations under Chapter 171, Tax Code, and shall verify credits claimed for such taxes that have been unlawfully or erroneously collected. Any credit shall be deducted from the tax due by the banking corporation in the manner specified in this subsection. . . . If the amount of unlawfully or erroneously collected tax exceeds $1,000, the portion of the credit deducted on the tax report will be (i) for the first tax report[7] due following the verification of such credit, 25 percent of the amount of tax unlawfully or erroneously collected; (ii) for the second tax report . . . 35 percent . . . ; (iii) for the third tax report . . . 40 percent . . . ; and (iv) for tax reported due thereafter, any part of the remaining amount . . . which was not deducted as a credit on previous reports. [Emphasis added.]

Despite the repeal of section 403.105, subsection (o) still has some effect, according to the following savings clause included in the repealing statute:

> (c) *This article does not affect the eligibility of a person to pursue legal remedies against the state, or to apply for and receive a credit, under Section 403.105(o), Government Code,* as that section existed immediately before the effective date of this article, for taxes assessed under Chapter 171, Tax Code, that have been unlawfully or erroneously collected before the effective date of this article, and the former law is continued in effect for that purpose. Notwithstanding Section 403.105(o), Government Code, as that section existed immediately before the effective date of this article, a local taxing unit is not liable for taxes assessed under Chapter 171,

---

[7]Annual reporting of franchise tax liability is required. Tax Code § 171.202.

> Tax Code, that have been unlawfully or erroneously collected before the effective date of this article. *This subsection does not affect a claim for a refund filed or other legal action commenced* against a local taxing unit before the effective date of this article.

Acts 1991, 72d Leg., 1st C.S., ch. 5, § 8.27(c) (emphasis added).

Subsection (o) of section 403.105 requires the banking corporation to choose between filing a claim with the comptroller for tax credits or pursuing legal remedies against the state other than taking credits against current or future taxes. Under the savings clause, banking corporations remain eligible for these options, except that they may not claim a refund from or initiate a legal action against a local taxing unit after the effective date of the statute.

In our opinion, the election under section 403.105(o) of taking tax credits against current or future taxes refers to the tax credits authorized by subsection (o). The subsection (o) provision for tax credits is a provision specific to the franchise tax and prevails over section 111.104 of the Tax Code, the earlier-enacted,[8] general provision for tax credits, to the extent of inconsistency between the two. Gov't Code § 311.026(b).

If a banking corporation does not elect to take tax credits, it may pursue other legal remedies including the refund remedy available under section 111.104 of the Tax Code. The bank's right to seek refunds is apparent from the savings clause. The savings clause gives local taxing units a prospective exemption from liability for unlawfully or erroneously collected franchise taxes, but leaves in effect "claim[s] for a refund filed or other legal action commenced against a local taxing unit" before the effective date of the statute. This language shows that the legislature considered a claim for a refund to be a "legal action" and thus a "legal remedy" available to a bank under subsection (o).

Thus, a banking corporation may elect to take the tax credits offered by subsection (o), in accordance with the tax credit schedule set out in subsection (o), or it may elect to pursue other legal remedies against the state, including the remedy of filing a claim for a refund under section 111.104 of the Tax Code.[9] Section 111.104, which applies to *all*

---

[8]The predecessor of section 403.105 of the Government Code was enacted in 1984, *see supra* p. 1, while the predecessor of section 111.104 of the Tax Code was adopted in 1959. Acts 1959, 56th Leg., 3d C.S., ch. 1, at 187, 194.

[9]Under any interpretation of section 111.104 of the Tax Code and section 403.105 of the Government Code, a taxpayer should, according to due process constraints, be authorized to recover the full amount overpaid to the state provided all state procedures are followed. *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, Dep't of Business Regulation of Florida*, 496 U.S. 18 (1990).

taxes collected and administered by the comptroller, is a legal remedy within section 403.105(o). Thus, as to the availability of a refund, the two provisions are not in conflict.

The second question concerns the sources for payment of franchise tax refunds to banks. Until January 1, 1988, all revenues of the franchise tax on banking corporations were distributed to local units of governments after deducting two percent for deposit in the comptroller's operating fund and retaining five percent in the local government corporate banking franchise tax fund to refund tax overpayments and to redeem dishonored checks and drafts deposited to the fund. Acts 1984, 68th Leg., 2d C.S., ch. 31, art. 3, pt. B, § 7, at 213; *see* Gov't Code § 403.105(e). The franchise tax was increased as of January 1, 1988, and the increase was credited to the general revenue fund.[10] Acts 1987, 70th Leg., 2d C.S., ch. 5, art. 2, pt. 1, § 1, at 22. You ask whether refunds should be drawn from these funds according to the same percentage in which the tax was allocated to them. This question involves a construction of article V, section 30 of the current general appropriations act, Acts 1991, 72d Leg., 1st C.S., ch. 19, a provision that appropriates money to pay tax refunds.

Article III, section 44 of the Texas Constitution prohibits the appropriation of money from the treasury to pay a claim, unless it has been "provided for by pre-existing law." As we have found, section 111.104 of the Tax Code authorizes the comptroller to refund unlawfully or erroneously collected taxes "from money appropriated for tax refund purposes." It is preexisting law which authorizes the legislature to appropriate money for tax refunds.

Under article VIII, section 6 of the Texas Constitution, "[n]o money shall be drawn from the Treasury but in pursuance of specific appropriations made by law . . . ." The general appropriations act includes the following provision, which appropriates money to pay tax refunds:

> 1. Any money deposited into the State Treasury which is subject to refund as provided by law[11] shall be refunded from the fund into which such money was *deposited, transferred, or otherwise*

---

[10]The provision authorizing distribution of the franchise tax to local governments was repealed effective January 1, 1992. Acts 1991, 72d Leg., 1st C.S., ch. 5, § 8.231. The revenue from the franchise tax is now deposited to the credit of the general revenue fund. Tax Code § 171.401.

[11]For example, section 111.104 of the Tax Code is a law providing authority for the refund of taxes unlawfully or erroneously collected. *See also Austin Nat'l Bank v. Sheppard*, 71 S.W.2d 242 (Tex. 1934); Attorney General Opinion WW-749 (1959) at 4 (common-law authority for appropriation of money from the treasury).

> *credited*, and so much as is necessary for said refunds is hereby appropriated.
>
> . . . .
>
> 3.  As a specific limitation to the amount of refunds paid from funds appropriated in this Act during the 1992-93 biennium, the Comptroller shall not approve claims or issue warrants for refunds in excess of the amount of revenue estimated to be available from the tax, fee, or other revenue source during the biennium according to the Biennial Revenue Estimate of the Comptroller of Public Accounts used for certification of this Act. *Any claim or portion of a claim which is in excess of this limitation shall be presented to the next legislature for a specific appropriation in order for payment to be made. This limitation shall not apply to any taxes or fees paid under protest.*

Acts 1991, 72d Leg., 1st C.S., ch. 19, art. V, § 30, at 1024 (emphasis added). Prior appropriations acts have included provisions virtually identical to subdivision 1 of section 30. *See* Acts 1989, 71st Leg., ch. 1263, art. V, § 30, at 5786.

Since the franchise tax on banking corporations was deposited into various funds, you inquire whether article V, section 30 of the appropriations act requires refunds of the tax to be drawn from each such fund at the same ratio in which the tax was placed in it. You inform us that it is the long-standing interpretation of the comptroller's office to interpret the above-quoted provision of the appropriations act in this way. We believe that this interpretation is consistent with the language of article V, section 30 of the general appropriations act.[12]

---

[12]The current appropriations act also includes the following language in the appropriation to the comptroller's office:

> APPROPRIATION OF TAX REFUNDS. As much of the respective taxes collected and administered by the Comptroller as may be necessary is hereby appropriated and set aside to pay refunds as provided by law, subject to the following limitations and conditions:
>
> a. [time limitations]
>
> b. [refunds limited by amount of revenue estimated to be available for the tax, fee, or other revenue source].

Acts 1991, 72d Leg., 1st C.S., ch. 19, art. I, at 422-23. Unlike the appropriation found in section 30 of article V, the above appropriation does not provide that refunds must be made from the fund into which the money was deposited, transferred, or otherwise credited. This appropriation may provide another source of funds to pay refunds of franchise taxes.

You suggested that franchise tax revenues placed in the comptroller's operating fund may not be used to pay franchise tax refunds, because no statute provides for refunds from that fund. Express language authorizing the appropriation of refunds from the comptroller's operating fund is unnecessary, as long as no statute or constitutional provision restricts the purposes for which the legislature may appropriate that fund. *See generally* Attorney General Opinion JM-321 (1985) (restrictions on use of constitutional highway fund). We find no statute or constitutional provision restricting the use of the operating fund. Article V, section 30 appropriates money for refunds from any fund to which money subject to refund was deposited, including the comptroller's operating fund.[13]

Your remaining questions arise from the failure of banks that paid franchise taxes now subject to refund. The Federal Deposit Insurance Corporation (hereinafter FDIC) became the receiver of the failed banks, taking possession of their assets and liabilities, which were ultimately transferred to successor banks. You state that it is unclear whether the FDIC or the successor banks are entitled to the refunds of franchise taxes paid by failed banks, and that you have received many duplicate claims from the FDIC and successor banks for the same franchise tax refunds. You ask us to review the agreements by which the FDIC transferred the assets and liabilities of failed banks to successor banks and to answer questions about the application of the merger credit authorized by section 171.1531 of the Tax Code.

Your questions seven, nine, and ten are as follows:

> Under each set of documents, is the FDIC or the successor bank entitled to any credit or refund owed the failed bank?
>
> Reviewing the documents submitted in Question Seven, which, if any, of the successor banks are entitled to the merger credit?
>
> If you conclude from the documents submitted that the successor bank was formed through any means other than a merger (i.e., transfers of assets, purchase or consolidation), is the successor bank precluded from claiming a merger credit under Tax Code Section 171.1531?

---

[13]The current general appropriations act provides that the comptroller's operating fund shall be used "for the purposes and only for the purposes appropriated." Acts 1991, 72d Leg., 1st C.S., ch. 19, art. I, at 422. There is one major item of appropriation to the comptroller's office, for "Agency Programs, Services and Operations." *Id.* at 420. This purpose is broad enough to authorize appropriations from the comptroller's operating fund to pay refunds of franchise taxes that the comptroller has legal authority to pay.

You ask us to construe the agreements because their intent as to the refunds of franchise taxes is unclear. This office, in the exercise of its authority to issue legal opinions, does not construe contracts.[14] Where the meaning of contract language is uncertain, a court will hear evidence of the parties' intention in choosing the language. *R & P Enters. v. La Guarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517 (Tex. 1980); 14 TEX. JUR. 3d *Contracts* § 184, at 303. This office cannot evaluate evidence or make fact findings in the opinion process, and thus cannot determine the effect of agreements between the FDIC and successor banks as to the disposition of the credit or refund owed to the failed bank, or whether the formation of the successor bank may be characterized as a merger for purposes of the merger credit under section 171.1531 of the Tax Code. Section 111.105 of the Tax Code provides for a hearing on the request of a person claiming a refund under section 111.104 of the Tax Code. This might be an appropriate procedure for resolving disputes as to whether the FDIC or the successor bank is entitled to refunds of franchise tax collected from failed banks.

You also ask the following question:

> May the Comptroller offset claims of the State of Texas against a failed bank on any refunds or credits that may be due?

Section 403.055 of the Texas Government Code provides in part:

> (a) The comptroller may not issue a warrant to a person[15] if the person is indebted or owes delinquent taxes to the state . . . until the debt or taxes are paid.
>
> . . . .
>
> (g) If a person owes delinquent taxes under a tax that the comptroller administers or collects, the comptroller may subtract the delinquent amount from the total amount due the person from the state, . . . and issue a warrant for the difference. The delinquent person is entitled to written notice of at least 20 days before the date

---

[14]This office does issue opinions on the authority of a public entity to contract with respect to particular subject matter or to agree to a particular contract term. *See, e.g.*, Attorney General Opinions JM-65, JM-57 (1983); H-966 (1977); *see also* Attorney General Opinion MW-290 (1981) (determining county auditor's duties with respect to financial transactions arising from a lease by examining unambiguous lease provisions). Such questions can be answered as a matter of law, without construing a contract or resolving disputes as to the intentions of the parties.

[15]The Code Construction Act, Gov't Code ch. 311, defines "person" to include "corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity." Gov't Code § 311.005(2).

> of the offset. The notice must conform to the notice requirements under Sections 111.018(b)(1) through (3), Tax Code. The comptroller may promulgate rules for the administration of this section. [Footnote added.]

This provision authorizes the comptroller to subtract the amount of delinquent taxes that a person owes the state from the amount of a state warrant payable to that person and issue a warrant for the difference. Thus, if a bank is entitled to a refund of franchise taxes, but is delinquent in paying another tax administered or collected by the comptroller, the comptroller may offset the delinquent taxes against the refund warrant. For section 403.055(g) to apply to an entity, it must be both entitled to the refund warrant and liable for the delinquent taxes.

Section 403.055(g) of the Government Code does not authorize the comptroller to offset claims the state may have against a bank, other than claims for delinquent taxes. We have found no statute or judicial decision authorizing a setoff of other debts owed the state by a bank against tax refunds due the bank, nor have you directed us to any. In the absence of a statute authorizing such offsets, we cannot conclude that you have general authority to do so. *But see generally State v. Noser*, 422 S.W.2d 594 (Tex. Civ. App.-- Corpus Christi 1967, writ ref'd n.r.e.); *State v. Martin*, 347 S.W.2d 809 (Tex. Civ. App.-- Austin 1961, writ ref'd n.r.e.) (once state voluntarily files a lawsuit, defendant may file counterclaims connected to the lawsuit). Section 403.055(a), quoted above, does require the comptroller to withhold warrants from a person indebted to the state until the debt is paid.

## S U M M A R Y

Former section 403.105 of the Government Code, which created the local government corporate banking franchise tax fund and provided for its disbursement to local taxing units, did not violate section 51 of article III of the Texas Constitution.

Section 403.105(o) of the Government Code, which provides remedies in the event franchise taxes have been unlawfully or erroneously collected from a banking corporation, remains in effect for some purposes. A banking corporation that is entitled to tax credits or a refund for overpayment of franchise taxes may elect to claim the tax credits authorized by former section 403.105 or pursue other legal remedies against the state, including the remedy of filing a claim for a refund under section 111.104 of the Tax Code.

Article V, section 30 of the current general appropriations act provides that money in the State Treasury that is subject to refund

may be refunded from the fund into which the money was deposited, transferred, or otherwise credited. Article V, section 30 constitutes an appropriation for the purposes of paying tax refunds. The comptroller interprets article V, section 30 as requiring him to draw refunds of tax from each fund in the treasury in the same ratio in which the tax was deposited in the fund. This long-standing interpretation of article V, section 30 and its predecessors is consistent with the language of that provision.

Section 403.055(g) permits the comptroller to deduct the amount of delinquent taxes a person owes under a tax administered or collected by the states from a state warrant owing that person, and issue a warrant for the difference.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General