Harry **YURISTA**, Respondent,

v.

**COMMISSIONER OF REVENUE**, Relator.

No. C2–89–2201.

Supreme Court of Minnesota.

Aug. 31, 1990.

Hubert H. Humphrey, III, Atty. Gen., Thomas Overton, Sp. Asst. Atty. Gen., Tax Litigation Div., St. Paul, for relator.

Robert L. Miller, Christopher J. Chaput, Minneapolis, for respondent.

COYNE, Justice.

Certiorari on the relation of the Commissioner of Revenue to review a decision of the tax court exempting from state income taxation that portion of mutual fund dividends directly attributable to United States Treasury notes and bonds. *See* 31 U.S.C. § 3124(a) (1982) and Minn.Stat. § 290.01, subd. 19b(1) (1988). We affirm.

Taxpayer Harry Yurista is a shareholder of two mutual funds: Investment Portfolio's "Government Plus Portfolio" and Massachusetts Financial Service's "Government Securities High Yield Trust." These two mutual funds invested in United States Treasury Notes and United States government bonds, among other investments, and paid dividends from earnings derived from all investments, including those government securities. More specifically, the earnings were derived from the following sources:

|  | Gov't Plus Portfolio | MFS Gov't "High Yield Trust" |
| --- | --- | --- |
| GNMA * | 2% | .4% |
| FNMA ** | 4 | 4.6 |
| U.S. Treasury Notes | 80 | 17.5 |
| U.S. Treasury Bonds | — | 76.1 |
| Federal Home Loan Bank | 1 | — |
| Federal Home Loan Mtge. Corp. | 1 | — |
| Short term capital gain | 12 | — |
| Other unspecified source *** | — | 1.4 |
|  | 100% | 100% |

\* Government National Mortgage Association
\** Federal National Mortgage Association
\*** The record is unclear as to the exact composition of this category

Yurista received dividends from these mutual funds in 1987 and included all dividends, regardless of their source, as income on his 1987 Minnesota tax return. Later, in March 1988, he requested a refund from the commissioner of revenue, asserting that he was entitled to exclude from income those amounts received from these two mutual funds that were based on earnings from tax-exempt interest paid on U.S. Government bonds and notes.[1] Specifically, he argued that he should be permitted to exclude $2896.63 from income and that he was therefore entitled to a refund of approximately $245 plus interest.

The commissioner denied the refund claim and Yurista appealed to the tax court in February 1989. In support of his argument, Yurista provided the tax court with information compiled by the funds' management group concerning the exact source of the dividends. The tax court ruled that those dividends which were directly attributable to the earnings from investments in tax-exempt United States

---

[1]. The tax court held that income derived from certificates which are merely guaranteed by the federal government, such as GNMA and FNMA, are not exempt from state income taxation. *See Rockford Life Ins. Co. v. Illinois Dep't of Revenue*, 482 U.S. 182, 189, 107 S.Ct. 2312, 2316, 96 L.Ed.2d 152 (1987). The taxpayer does not challenge that portion of the decision holding taxable dividends directly attributable to interest derived from GNMA, FNMA, the Federal Home Loan Mortgage Corporation, the Federal Home Loan Bank or the unspecified "other" sources.

obligations were excludable from Yurista's income for state tax purposes and directed the refund. The commissioner challenges that determination.

Relator advances two arguments in support of the broad contention that the tax court ignored fundamental principles of both constitutional law and tax exemption. Urging a cautious approach to the identification of tax exempt income, the commissioner stresses the distinctive characteristics and tax consequences of mutual fund *dividend* distributions as opposed to direct *interest* payments from a tax-exempt federal obligation. In apparently contending that the aggregation of dividends and interest from a variety of sources by a mutual fund before distribution to individual fund shareholders is of particular significance or somehow alters the nature of the income, the argument ignores persuasive evidence attributing specific distributions to immune federal obligations.

Long ago in *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 431, 4 L.Ed. 579 (1819), Chief Justice Marshall observed that "the power to tax involves the power to destroy * * *." Seeking to limit potential abuse and to curb state's power in this regard, the United States Supreme Court held that the supremacy clause of the federal Constitution prohibited a state government from taxing a federal bank. *Id.* at 436. Ten years later, the Court similarly prohibited state taxation of federal obligations that were in the hands of private persons. *Weston v. City Council of Charleston,* 27 U.S. (2 Pet.) 449, 467, 7 L.Ed. 481 (1829). However, the United States Supreme Court subsequently developed a rule by which states were permitted to levy taxes that burdened federal obligations so long as the legal incidence of the taxes did not directly fall

upon the federal obligation. *Van Allen v. Assessors,* 70 U.S. (3 Wall.) 573, 584, 18 L.Ed. 229 (1866); *see also Home Sav. Bank v. Des Moines,* 205 U.S. 503, 517–18, 27 S.Ct. 571, 575, 51 L.Ed. 901 (1907) (shareholder stock is separate from property of corporation and severs immunity granted to federal obligations)..

This "separate incidence" rule allowed the states to circumvent the constitutional immunity of federal obligations from state taxation by levying the tax upon the bank stock and indirectly taxing the federal obligation on which the bank stock was based. One commentator has explained: "Simply stated, the separate incidence rule allowed states to levy taxes which to some degree burdened federal obligations as long as the *legal incidence* of the taxes did not fall directly on any federal obligations." John A. Miller, American Bank & Trust Co. v. Dallas County: *The Quiet Passing of the Separate Incidence Rule,* 41 Tax Law. 831, 833 (1988) (footnote omitted; emphasis in original) (hereinafter "Miller").

Congress codified this rule in Revised Statutes of 1878, tit. 42, § 3701, 18 Stat. 731:[2] "all stocks, bonds and other securities of the United States held by individuals, corporations or associations within the United States shall be exempt from taxation by or under State authority."

In an apparent effort to rectify the abuse of the separate incidence rule, Congress amended this section in 1959 and added the following sentence: "This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, *directly or indirectly,* in the computation of the tax * * *." Act of Sept. 22, 1959, § 105(a), 73 Stat. 622 (emphasis added). When Title 31 of the Code was enacted into

**2.** This law has been referred to as "section 3701," "section 742," and "section 3124(a)." The variety of names is due to the recent recognition of the United States Code as "legal evidence" of federal laws:

For many years, the official version of any federal law could only be found in the Statutes at Large. Consequently, the official version of this law for many years was found at Rev.Stat. of 1878, tit. 42, § 3701, 18 Stat. 731, and the unofficial version was found at 31 U.S.C. § 742.

Recently, however, the United States Code was reformulated and its status was elevated to "legal evidence" of federal law. Section 3701, unofficially found at section 742 in the Code, was reformulated without substantive change at 31 U.S.C. § 3124(a) (1982).

Because the state taxes at issue here were levied in 1987, 31 U.S.C. § 3124(a) technically controls this case.

positive law in 1982, the language of "directly or indirectly" of section 3124(a) was removed as surplusage. H.R.Rep. No. 651, 97th Cong., 2d Sess. 94 (1982), U.S.Code Cong. & Admin.News 1982, 1985, 1988. The United States Supreme Court has stated that the 1982 revision of this section was "without substantive change." *American Bank & Trust Co. v. Dallas County,* 463 U.S. 855, 859 n. 1, 103 S.Ct. 3369, 3373 n. 1, 77 L.Ed.2d 1072 (1983). Thus, although the phrase "directly or indirectly" has been removed from the statute, the purpose and meaning of the statute remains the same.

■ The statute as codified now reads: Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except—

> (1) a nondiscriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation; and
>
> (2) an estate or inheritance tax.

31 U.S.C. § 3124(a) (1982). Minnesota legislation embraces and effectuates the federal policy. *See* Minn.Stat. § 290.01, subd. 19b(1) (1988) (effective for taxable years beginning after December 31, 1986) which provides:

> For individuals, estates, and trusts, there shall be subtracted from federal taxable income:
>
> > (1) interest income on obligations of any authority, commission, or instrumentality of the United States to the extent includable in taxable income for federal income tax purposes but exempt from state income tax under the laws of the United States.

For income tax purposes, Minnesota defines "net income" as federal taxable income. Minn.Stat. § 290.01, subd. 19 (1988). Consequently, the use of the term "federal taxable income" within section 290.01, subd. 19b(1) demonstrates that interest income on obligations of the United States

shall be subtracted from the taxpayer's net income.

While we have not had the occasion to address the precise issue presented by this appeal, we find instruction in the analysis offered in *American Bank,* 463 U.S. 855, 103 S.Ct. 3369. There, the United States Supreme Court considered the question of whether a state tax on bank shares, computed on the basis of the bank's net assets without a deduction for the tax-exempt United States obligations held by the bank, violated 31 U.S.C. § 3124(a). The Court held that the 1959 amendment to this statute abolished the "separate incidence" rule: "Under the plain language of the 1959 amendment, however, the tax is barred regardless of its *form* if federal obligations must be considered, either directly or indirectly, in *computing* the tax." 463 U.S. at 862, 103 S.Ct. at 3374 (emphasis in original). Although *American Bank* is factually distinguishable because it involved taxes on bank shares which included federal obligations, we note that section 3124(a) also immunizes the interest earned from those obligations. *See* Miller, *supra,* at 845 (*American Bank* "teaches that a corporation is now a conduit for tax-exempt interest rather than a 'nonconductor.' ") (footnote omitted).

■ Accordingly, we are persuaded that, in relying on the technical classification of mutual fund distributions as dividends rather than, as here at least in part, the interest on the federal tax-exempt obligation they represent, the commissioner would frustrate the principles of this exemption. The ability of a taxpayer to demonstrate with specificity a direct attribution of income to the tax-exempt federal obligations is sufficient to overcome any technical nomenclature of those distributed funds. In so deciding, we note that several jurisdictions have held that section 3124(a) prohibits indirect state taxation of interest on federal obligations: *Brown v. Franchise Tax Bd.,* 197 Cal.App.3d 300, 305–06, 242 Cal.Rptr. 810, 813 (1987) (holding dividends received from mutual fund that are directly attributable to interest derived from federal obligation is immune from

state taxation); *Andras v. Illinois Dep't of Revenue,* 154 Ill.App.3d 37, 42, 106 Ill.Dec. 732, 736, 506 N.E.2d 439, 443 (1987) (same), *cert. denied,* 485 U.S. 960, 108 S.Ct. 1223, 99 L.Ed.2d 424 (1988); *In re Thomas C. Sawyer Estate,* 149 Vt. 541, 543–44, 546 A.2d 784, 785 (1987) (same); *Capital Preservation Fund v. Wisconsin Dep't of Revenue,* 145 Wis.2d 841, 847, 429 N.W.2d 551, 554 (Wis.Ct.App.1988) (same).

The commissioner then contends that requiring a "source inquiry" on every claimed entitlement to an exemption would impose an untoward and impractical burden on the taxing authority. However, in so asserting, he assumes a far broader entitlement to the exemption than announced by the tax court or approved today by this court. The rule announced here is limited to the availability of the tax immunity to the first level of traceable distribution from a mutual fund with investments in both tax-exempt and non-tax-exempt federal government securities.

Affirmed.