Robert E. MEUNIER, et al., Respondents,

v.

**MINNESOTA DEPARTMENT OF REVENUE, et al., Appellants.**

**No. C4–92–1626.**

Supreme Court of Minnesota.

July 23, 1993.

Hubert H. Humphrey, III, Atty. Gen., Thomas K. Overton, Sp. Asst. Atty. Gen., Tax Litigation Div., St. Paul, for appellants.

James C. Diracles, Robert L. Miller, Caryn S. Glover, Robert D. Maher, Minneapolis, for respondents.

## OPINION

COYNE, Justice.

On accelerated review of summary judgment awarding plaintiffs income tax refunds on approximately 60 percent of the United States civil service pension benefits received in 1986 by the plaintiffs, who are retired federal civil service employees, we reverse.

Reserving the right to introduce evidence inconsistent with the stipulated facts, the parties entered into a stipulation of facts. During calendar year 1986 each of the three named plaintiffs received retirement benefits in amounts ranging from $14,700 to $36,012 paid by the Civil Service Retirement and Disability Fund in the form of monthly annuity payments. Each plaintiff reported the gross annuity amount shown on 1986 form W–2P(A) issued by the Office of Personnel Management, Civil Service Retirement System on his 1986 United States and Minnesota income tax returns and paid the Minnesota income tax payable on that amount. In October 1990 each plaintiff filed an amended 1986 Minnesota income tax return claiming entitlement to a refund on the ground that a portion of his pension annuity payments is derived from "U.S. Government interest" exempt from state taxation pursuant to 31 U.S.C. § 3124(a) (1988). When the Department of Revenue denied their claims, the plaintiffs commenced this action. On plaintiffs' motion for summary judgment the district court awarded the plaintiffs refunds "for state income tax paid on the portions of their annuities attributable and traceable to interest earned by the Fund on U.S. government obligations." For purposes of calculating the amount of the refunds, the district court "found" that all "interest

earned on U.S. securities by the Fund during a given year is deemed to be paid out to the Fund's annuitants in that year." The Department of Revenue appealed from the summary judgment, and this court accepted accelerated review.

By the Act of May 22, 1920 Congress established the Civil Service Retirement and Disability Fund, to which employing agencies of the federal government and their employees transmit their respective mandatory contributions. Act of May 22, 1920, ch. 195, 41 Stat. 614 (1921) (codified as amended at 5 U.S.C. §§ 8301–8348 (1988 & Supp. IV 1992)). Since 1987 the Fund has comprised two separate defined benefit pension plans: (1) The Civil Service Retirement System provides a defined benefit pension based on length of service and salary level, and it administers the pensions of most federal employees hired before 1983, 5 U.S.C. §§ 8301–8351 (1988 & Supp. IV 1992); (2) the Federal Employees Retirement System implemented in 1987 provides a defined benefit pension integrated with social security.[1] 5 U.S.C. §§ 8401–8479 (1988 & Supp. IV 1992). All of the plaintiffs here receive annuity payments from the Civil Service Retirement System's pension plan.

5 U.S.C. § 8348(a) (1988) provides that the "Fund is appropriated for the payment of" benefits and certain administrative expenses incurred by the Office of Personnel Management. The Secretary of the Treasury is authorized to accept donations or gifts to the Fund contributed for the benefit of civil service employees generally, 5 U.S.C. § 8348(b) (1988), and the Secretary is directed to invest all currently available portions of the Fund which are not immediately required for payments in interest-bearing securities of the United States. 5 U.S.C. § 8348(c) (1988). The income derived from these investments constitutes part of the Fund. *Id.* The statute goes on to provide that whenever a statute authorizes new or liberalized benefits payable from the Fund, the statute is deemed to authorize appropriations to the Fund to

finance the unfunded liability created by that statute. 5 U.S.C. § 8348(f) (1988).

5 U.S.C. § 8347(f) (1988) provides for the appointment of a three-member Board of Actuaries, which makes actuarial valuations of the Fund every five years or oftener and reports annually on the actuarial status of the Civil Service Retirement System, gives its advice and opinion on matters referred to it, and recommends changes the Board judges necessary to maintain the System on a sound financial basis.

At the end of each fiscal year the Secretary of the Treasury is required, on notice from the Office of Personnel Management, to credit to the Fund an amount equal to the interest on the unfunded liability computed at the interest rate used by the actuaries in their most recent valuation of the Civil Service Retirement System plus that portion of disbursements for annuities for that year which is estimated to be attributable to credit for military service for which deposits had not been made. 5 U.S.C. § 8348(g) (1988). The statute also makes provision for appropriations from the general fund of the Treasury to cover the Fund's loss of income during any debt issuance suspension period occasioned by the public debt limit, 5 U.S.C. § 8348(j) (1988), and it imposes on the United States Postal Service and the Panama Canal Commission liability for certain increases in the Fund's unfunded liability. 5 U.S.C. § 8348(i) and (m) (1988 & Supp. IV 1992).

The parties have stipulated that for income tax purposes the Fund is treated as a qualified pension plan trust described in Internal Revenue Code § 401(a) (1988 & Supp. III 1991) and exempt from taxation pursuant to Internal Revenue Code § 501(a) (1988), and they have also stipulated that the Fund's annuity payments to retirees are subject to federal income tax pursuant to Internal Revenue Code § 72 (1988 & Supp. III 1991). Prior to 1986 each of the plaintiffs had recovered his cost

---

**1.** The Federal Employees Retirement System also maintains an optional Thrift Savings Plan, which has at least some of the attributes of a

defined contribution plan and which is administered and maintained as a separate fund. *See* 5 U.S.C. §§ 8471–8479 (1988 & Supp. IV 1992).

basis so that all annuity payments received in 1986 and subsequent years are subject to federal income taxation. *Id.*

Based on the exemption from state taxation afforded obligations of the United States by 31 U.S.C. § 3124(a), as construed in *American Bank & Trust Co. v. Dallas County*, 463 U.S. 855, 103 S.Ct. 3369, 77 L.Ed.2d 1072 (1983), plaintiffs contend that the Civil Service Retirement and Disability Fund is merely a conduit which passes the interest earned by the portion of the Fund invested in U.S. securities, together with its § 3124(a) exemption, through to retirees. The argument is, however, misconceived.

First, the plaintiffs' contention rests on an overbroad reading of the *American Bank* case. In *American Bank, supra,* the Supreme Court held that a Texas property tax on bank shares, calculated not on the actual value of the shares but instead on the value of the underlying assets—the net assets of the bank—including United States obligations owned by the bank, violated what is now 31 U.S.C. § 3124(a) (1988). Without repeating the statutory history recently summarized in *Yurista v. Comm'r of Revenue*, 460 N.W.2d 24, 26–27 (Minn.1990), it appears necessary to call attention to Justice Blackmun's repeated emphasis in *American Bank* on the *computation* of the tax. For example, he supplied the emphasis in this quotation from *Memphis Bank & Trust Co. v. Garner*, 459 U.S. 392, 395–96, 103 S.Ct. 692, 694–95, 74 L.Ed.2d 562 (1983):

> [31 U.S.C. § 3124(a) ] extends *to every form* of taxation that would require that either the obligations or the interest thereon, or both, *be considered, directly or indirectly, in the computation of the tax.*

463 U.S. at 862, 103 S.Ct. at 3374. Later, in discussing the reasons for the abandonment of the pre–1959 approach known as the separate incident rule, Justice Blackmun again emphasized the computation of the tax:

> Under the plain language of the 1959 amendment, however, the tax is barred regardless of its *form* if federal obligations must be considered, either directly or indirectly, in *computing* the tax.

*Id.* (emphasis by the Court).

Nothing about the *form* of the tax at issue is in any way reminiscent of the separate incident rule: it is an income tax imposed by the State of Minnesota on annuity payments received by the plaintiff retirees without reference to the underlying source of those payments. More to the point, the Minnesota tax tracks the provisions of section 72 of the Internal Revenue Code so that the tax is computed solely on the total amount of the annuity payments received in a particular year subject to reduction by the unrecovered cost basis of the annuity.[2] In turn the amount of the annuity payments is determined by the length of the retiree's service and age at retirement and by the retiree's average pay.[3] Neither the amount of the annuity payments nor the amount of the Minnesota tax is measured by or computed on or dependent in any way on the amount of interest received by the Fund by reason of its ownership of U.S. securities.

The plaintiffs' assertion that the amount of the annuity payments to retirees depends on the amount of interest earned by the Fund is wrong. The amount of a retiree's annuity payments is set by statute, 5 U.S.C. § 8339 (1988 & Supp. IV 1992), and depends on an employee's age and length of service at retirement and the employee's

---

**2.** 5 U.S.C. § 8343 (1988) permits an employee to make voluntary contributions to the Fund in an amount not to exceed 10% of the employee's basic pay. Voluntary contributions are used to purchase at retirement an annuity in addition to the annuity otherwise provided. To the extent such voluntary contributions are made with after-tax dollars, the purchase price of the additional annuity would be excluded from gross income pursuant to I.R.C. § 72(b). As indicated earlier, it is stipulated that each of the plaintiffs

here had recovered his cost basis prior to 1986 so that all annuity payments in 1986 and subsequent years are subject to federal income taxation.

**3.** " 'Average pay' means the largest annual rate resulting from averaging an employee's or Member's [Member of Congress] rates of basic pay in effect over any 3 consecutive years of creditable service * * * *." 5 U.S.C. § 8331(4) (1988).

average wage. Subsequent adjustments in annuities depend not on the Fund's income but on increases in the price index,[4] which trigger cost-of-living increases in annuities. 5 U.S.C. § 8340 (1988). Although the Board of Actuaries undoubtedly employs actuarial assumptions, including an assumed rate of inflation, assumed general salary increases, and an assumed rate of investment earnings, in their actuarial valuation of the Fund and their annual report, these reports have no effect on the amount of annuity payments to retirees. The actuarial assumptions are employed to determine the actuarial status of the Fund—that is, the Board uses actuarial assumptions to estimate the Fund's unfunded liability. The Board's determination of unfunded liability and the interest rate assumed by the actuaries in their latest valuation of the Fund, together with the estimated amount of unfunded annuity payments attributable to credit for military service, determine the amount the Secretary of the Treasury must credit to the Fund. The purposes of the reports and recommendations of the Board of Actuaries are the protection of the public interest and the maintenance of the Civil Service Retirement System on a sound financial basis.

In short, the Minnesota income tax is computed only on the amount of a retiree's annuity payments, and because the tax is neither computed on nor measured by, either directly or indirectly, the amount of income realized by the Fund from U.S. securities, it does not violate 31 U.S.C. § 3124(a) (1988).

Citing *Yurista v. Comm'r of Revenue*, 460 N.W.2d 24 (Minn.1990), however, the plaintiffs insist they are entitled to look to the source of the funds used to make their annuity payments, that the Fund is simply a conduit through which the income from obligations of the United States is passed with its § 3124(a) tax exemption intact. Initially, it appears to us that the plaintiffs here have fallen into the same error as did the commissioner in *Yurista*—they assume "a far broader entitlement to the exemp-

tion" than approved by the court in *Yurista*. There are substantial and very significant differences between a mutual fund such as those involved in *Yurista* and the Civil Service Retirement and Disability Fund. Ownership of a specified number of shares of a mutual fund operated by a regulated investment company is acquired voluntarily with after-tax dollars and held as an investment, which can be sold or cashed at the owner's election. The mutual fund is required to distribute its net income annually, with a proportionate part of that income allocated to each outstanding share of the fund and held for the account of the owner of each share or distributed outright as the owner instructs. In either case the income, denominated either as interest or dividend, is subject to tax in accordance with the Internal Revenue Code and applicable state statutes. Moreover, when at least 50 percent of the value of total assets of a regulated investment company consists of state and municipal bonds exempt from taxation pursuant to Internal Revenue Code § 103(a) (1988), the company is qualified to pay exempt-interest dividends, which the shareholder-recipients are entitled to treat as an item of interest excludable from gross income. I.R.C. § 852(b)(5) (1988). The effect, then, of the *Yurista* decision was simply to enforce compliance with 31 U.S.C. § 3124(a) by requiring reciprocal recognition by the state of the doctrine of intergovernmental tax immunity honored by the federal government at I.R.C. § 852(b)(5). In lay terms the regulated investment company becomes a conduit through which the federal interest exemption is passed to its shareholders.

While the Civil Service Retirement Fund permits some voluntary contributions which can be used to purchase an additional annuity on retirement, any ground common to the Fund and a mutual fund ends there. All other contributions to the fund by either employer or employee are statutorily mandated as are the amounts of the annuity payments to retirees. The fund

---

**4.** "'Price index' means the Consumer Price Index published monthly by the Bureau of Labor Statistics." 5 U.S.C. § 8331(15) (1988).

does not allocate those contributions to be held for the account of each employee-contributor. The United States Court of Appeals for the District of Columbia has held that if there can be any vested rights at all in federal civilian service annuity, they do not accrue unless the employee is fully entitled to immediate payment under the preexisting law. *Nordstrom v. U.S.*, 342 F.2d 55, 169 Ct.Cl. 632 (1965). *See also Rafferty v. U.S.*, 210 F.2d 934 (3d Cir. 1954).[5] Congress has decreed that the currently available portions of the Fund not immediately required for annuity payments are to be invested in securities of the United States. The investment direction undoubtedly was prompted by concern for the safety of the Fund rather than tax exemption because the Fund itself is treated as a tax exempt pension plan fund pursuant to I.R.C. §§ 401 and 501.

The annuity payments to retirees are subject to federal income taxation in accordance with I.R.C. §§ 402 (1988 & Supp. III 1991) and 72. Those sections do not allow qualified pension trusts to make income distributions which would retain the same character in the hands of a retiree when distributed as the income had when received by the trust. In fact, a revenue ruling specifically provides that interest on tax-exempt securities loses that exemption on distribution from the trust:

Although a distribution from an employees' trust meeting the requirements of section 401 of the Internal Revenue Code of 1954 is made in whole or in part from funds received by the trust as interest on tax-free securities, such distribution,

when received or made available, is taxable income to the distributee in the manner and to the extent provided by section 402(a) of the Code.

Rev.Rul. 55–61, 1955–1 CB 40.

In deciding that civil service retirement benefits are subject to 4 U.S.C. § 111[6], the United States Supreme Court had this to say about the character of civil service annuity payments:

While retirement pay is not actually disbursed during the time an individual is working for the Government, the amount of benefits to be received in retirement is based and computed upon the individual's salary and years of service. 5 U.S.C. § 8339(a). We have no difficulty concluding that civil service retirement benefits are deferred compensation for past years of service rendered to the Government. (Citations omitted). And because these benefits accrue to employees on account of their service to the Government, they fall squarely within the category of compensation for services rendered 'as an officer or employee of the United States.'

*Davis v. Michigan Department of the Treasury*, 489 U.S. 803, 808, 109 S.Ct. 1500, 1504, 103 L.Ed.2d 891 (1989). Therefore, the Court held, while Michigan could impose a nondiscriminatory income tax on retired federal employees, the Michigan Income Tax Act violated principles of intergovernmental tax immunity by exempting the retirement benefits of retired state and local government employees while taxing the retirement benefits of retired federal

5. *Keys v. Vermont Department of Taxes,* 149 Vt. 658, 552 A.2d 418, *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 911 (1988), on which plaintiffs rely, is distinguishable. On his retirement, Keys received a lump sum distribution from a defined contribution retirement plan *which permitted employee-directed investment* of his account. Unlike the defined benefit Fund, each participant in a defined contribution plan has a separate account and payments from that plan consist of the contributions made by or on behalf of that participant plus whatever income the funds held for that participant's ac*count have earned.* We do not suggest that payments from defined benefit plans and payments from defined contribution plans should be taxed differently, but merely observe that

because a separate account is maintained for each participant in a defined contribution plan, at least the income credited to each account is directly traceable.

6. In relevant part, 4 U.S.C. § 111 provides as follows:

The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States * * * by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.

employees. *Id.* at 817, 109 S.Ct. at 1508–09.

The plaintiffs here complain that the Department of Revenue's declination to treat approximately 60 percent of their annuity payments as exempt-interest distributions discriminates against them. In fact, however, the plaintiffs ask the Department to discriminate in their favor. No retired state employee and no retiree from the private sector is exempt from either federal or Minnesota taxation with respect to distributions from a qualified pension trust which holds state or local bonds exempt from taxation pursuant to I.R.C. § 103(a).

We conclude, therefore, that 31 U.S.C. § 3124(a) does not require Minnesota to characterize annuity payments to retired federal employees as pass-through distributions of tax exempt interest in the face of the provisions of I.R.C. § 72 and Rev.Rul. 55–61, 1955–1 CB 40, which subject those payments to taxation in the same manner as any commercial annuity, and in the face of the decision of the United States Supreme Court in *Davis v. Michigan Department of the Treasury, supra,* which recognizes annuity payments to retired federal employees as deferred compensation subject to nondiscriminatory state taxation, pursuant to 4 U.S.C. § 111 (1988). To rule otherwise would, we believe, constitute a violation of the doctrine of intergovernmental tax immunity which, as Justice Kennedy noted in *Davis,* "had its genesis in *McCulloch v. Maryland,* [17 U.S.( ] 4 Wheat.) 316 [4 L.Ed. 579] (1819)." 489 U.S. at 810, 109 S.Ct. at 1505.

Accordingly we reverse and direct entry of judgment in favor of the Minnesota Department of Revenue.

Reversed with direction to enter judgment in favor of the Minnesota Department of Revenue.