*This opinion is subject to revision before final publication in the Pacific Reporter*

**2013 UT 29**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

CHIN M. LEE and YVONNE E. LEE,
*Appellants and Petitioners,*
*v.*
UTAH STATE TAX COMMISSION,
*Appellee and Respondent.*

No. 20120141
Filed May 14, 2013

Original proceeding in this Court

Attorneys:

Chin M. Lee and Yvonne E. Lee, petitioners pro se

John E. Swallow, Att'y Gen., Stephen M. Barnes, Asst. Att'y Gen.,
for respondent

JUSTICE DURHAM authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE PARRISH, and JUSTICE LEE joined.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1     Chin and Yvonne Lee appeal the Utah State Tax Commission's decision finding state tax liability on distributions from their qualified profit-sharing plan (Plan). The Tax Commission held that the Plan did not act as a conduit; therefore, the tax-exempt character of any funds in the Plan was lost upon distribution. We affirm.

## BACKGROUND

¶2     In 1990, Mr. Lee established a defined-benefit plan, which he converted in 1996 into a profit-sharing plan, both of which were qualified plans under Internal Revenue Code section 401 (Section 401). Employer contributions to profit-sharing plans are tax-deductible to the employer at the time of contribution. *See infra* ¶ 8. Plan funds grow tax-free until they are distributed, at which time distributions are taxable to the employee as ordinary income. *See infra* ¶¶ 8-9. Here, Mr. Lee's sole proprietorship[1] contributed funds to the Plan from 1990 to 1995. These funds were invested entirely in U.S. government obligations, the interest on which is tax-exempt under

---

[1]  The Plan's governing documents did not allow for employee contributions.

31 U.S.C. section 3124(a) (Section 3124). When Mr. Lee became eligible to receive distributions at age 70 ½, the Lees sought advice from Tax Commission employees on how to file their income taxes to account for the interest from the U.S. obligations held by the Plan. After the employees were unable to help them, they filed their taxes based on their own research.

¶3      In their 2005 and 2006 tax filings, the Lees reported Plan distributions and claimed deductions for federal obligation interest that the Plan earned in those years and in earlier years. The Auditing Division of the Tax Commission disallowed these deductions.

¶4      The Lees requested a redetermination of their 2005 and 2006 tax liability. After an initial hearing and a preliminary decision against them, the Lees sought formal review by the Tax Commission. The administrative law judge concluded that the Lees' distributions from the Plan were not exempt from state taxation under Utah Code section 59-10-114(2)(a), even though the Plan assets were invested solely in U.S. government obligations. The Lees petitioned this court for review under Utah Code section 59-1-602(1)(a). We granted their petition and have jurisdiction pursuant to Utah Code sections 63G-4-403(1) and 78A-3-102(3)(e)(ii).

## STANDARD OF REVIEW

¶5      Utah Code section 59-1-610(1) provides that "[w]hen reviewing formal adjudicative proceedings commenced before the [tax] commission, the . . . Supreme Court shall . . . grant the commission no deference concerning its conclusions of law, applying a correction of error standard." Whether a statute has been properly interpreted is a question of law. *Jacques v. Midway Auto Plaza, Inc.*, 2010 UT 54, ¶ 11, 240 P.3d 769. Thus, we review the Tax Commission's interpretation of Utah Code section 59-10-114(2)(a) for correctness.

## ANALYSIS

¶6      In determining whether the distributions from the Plan are exempt from state taxation, we analyze the federal tax treatment of qualified plans, discuss applicable Utah income tax statutes, and examine the nature of conduit and non-conduit entities. We determine that because the Plan is a non-conduit entity, the tax-exempt character of the federal obligation interest does not pass through the Plan to benefit the Lees.

## I. THE LEES' PLAN IS A QUALIFIED PLAN UNDER SECTION 401 OF THE INTERNAL REVENUE CODE

¶7 The parties agree that both the Lees' profit-sharing plan and their previous defined-benefit plan were Section 401 qualified plans. Section 401 defines a qualified plan as

> [a] trust created or organized in the United States . . . if contributions are made to the trust by such employer, or employees, or both, or by another employer who is entitled to deduct his contributions under section 404(a)(3)(B) . . . for the purpose of distributing to such employees or their beneficiaries the corpus and income of the fund accumulated by the trust in accordance with such plan.

26 U.S.C. § 401(a). Section 401 discusses three types of qualified plans: stock bonus plans, pension plans, and profit-sharing plans. *Id.*

¶8 Under federal law, an employer can deduct its contributions to qualified plans when made. *Id.* § 404(a). Accordingly, contributions by Mr. Lee's sole proprietorship were tax-deductible to the business in the year of contribution. As a further tax benefit, employer contributions are not included in the employee's gross income at the time of contribution. Employees are taxed on the funds only when they receive distributions. *Id.* § 402(a).

¶9 Internal Revenue Code section 402(a) states that "any amount actually distributed to any distributee by any employees' trust described in section 401(a) . . . shall be taxable to the distributee, in the taxable year of the distributee in which distributed, under section 72." That is, distributions made from any Section 401 qualified plan are taxed as annuities under Internal Revenue Code section 72. Section 72 provides that every distribution "received as an annuity"—which under section 402(a) includes distributions from a qualified plan—must be included in gross income. *Id.* § 72(a)(1).

¶10 Consequently, the distributions Mr. Lee received from his qualified plan are taxable as ordinary income, just as any distribution from a retirement or pension plan. The parties disagree, however, as to whether distributions from the Plan are tax-exempt because the Plan funds were invested in U.S. government obligations.

## II. FEDERAL LAW LIMITS UTAH'S ABILITY TO TAX PROCEEDS FROM U.S. GOVERNMENT OBLIGATIONS

¶11    The Lees are correct that under some circumstances, federal law prohibits states from taxing the proceeds of U.S. government obligations. Federal law provides that "[s]tocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax," with certain exceptions not relevant to the Lees' appeal. 31 U.S.C. § 3124(a). The U.S. Supreme Court has said that "the interest on the obligation is 'considered' when that interest is included in computing the taxpayer's net income or earnings for the purpose of an income tax or the like." *Neb. Dep't of Revenue v. Loewenstein*, 513 U.S. 123, 129 (1994). Thus, if a taxpayer receives income directly from U.S. obligations that is included in the taxpayer's reported net income, then that income is exempt from state taxation.

¶12    Utah recognizes this exemption through Utah Code section 59-10-114(2)(a)(i), which provides that "the interest or a dividend on an obligation or security of the United States" is deductible from state adjusted gross income if it is (1) "included in adjusted gross income for federal income tax purposes for the taxable year" and (2) "exempt from state income taxes under the laws of the United States."

¶13    Although income received as interest on U.S. government obligations is exempt from state taxation, the income the Lees claimed to be exempt was not received as interest on U.S. obligations, but rather as distributions from a qualified Section 401 plan. Thus, the distributions qualify for a tax exemption only if the Plan acted as a conduit, allowing the funds to retain their tax-exempt character after distribution.

## III. THE LEES' PROFIT-SHARING PLAN IS A NON-CONDUIT ENTITY

¶14    Both the Lees and the Tax Commission agree with our analysis up to this point. Both accept that Plan distributions are generally taxable to the beneficiary and that Section 3124 exempts interest on federal obligations under certain circumstances. They disagree as to how these rules interface with each other. The Lees argue that the tax-exempt character of the interest received by the Plan is passed through to them, rendering a portion of their distributions tax-exempt. The Tax Commission argues that the

interest loses its tax-exempt nature when the funds are distributed to the beneficiary. The central question, therefore, is whether the Plan operates as a conduit.

¶15 Conduit entities — for example, mutual funds, S corporations, and some partnerships — allow their funds to retain the same tax character in the hands of the beneficiaries or owners as they had in the conduit entity. 26 U.S.C. § 1366; *see also* IRS Internal Revenue Manual 8.19.1.2 (Oct. 5, 2012), *available at* http://www.irs.gov/irm/part8/irm_08-019-001.html.

¶16 However, the Internal Revenue Service has clarified that upon distribution, funds from a qualified plan do *not* retain the character they had when they were in the plan. Revenue Ruling 55-61 states:

> Although a distribution from an employees' trust meeting the requirements of section 401 of the Internal Revenue Code of 1954 is made in whole or in part from funds received by the trust as interest on tax-free securities, such distribution, when received or made available, is taxable income to the distributee in the manner and to the extent provided by section 402(a) of the Code.

Rev. Rul. 55-61, 1955-1 C.B. 40. Similarly, in Revenue Ruling 72-99, the IRS explained that the character of the funds received by a qualified plan "has no bearing on the treatment of the distribution." Rev. Rul. 72-99, 1972-1 C.B. 115. When funds are distributed, they lose their separate identity and simply become part of the plan assets. *Id.*

¶17 Thus, despite Plan funds being invested in U.S. government obligations, distributions from a Section 401 qualified plan are fully taxable. The funds in the Lees' profit-sharing plan, invested in U.S. government obligations, were exempt from income tax while in the Plan. But upon distribution, those funds became Plan distributions and can no longer be treated as interest on tax-exempt securities. The distributions from the Plan are simply income from a qualified plan, subject to taxation under the Internal Revenue Code and Utah law.

¶18 Opinions from other jurisdictions support this view. The Minnesota Supreme Court has held that distributions from a qualified plan that is invested in tax-exempt obligations are taxable as annuities under Internal Revenue Code section 72. *Meunier v. Minn. Dep't of Revenue*, 503 N.W.2d 125, 131 (Minn. 1993). Although

the plan in *Meunier* was a defined-benefit pension plan, rather than a profit-sharing plan, the tax treatment of the pension plan was dictated by Section 401, which also governs the Lees' Plan. *See id.* at 127. In a later case, the Minnesota Tax Court held that distributions from "an employee profit-sharing plan" were not exempt from state income tax under Section 3124. *Cherne v. Comm'r of Revenue*, Nos. 6601, 6543, 6626, 1996 WL 337043, at *2 (Minn. Tax Ct. June 14, 1996). The California State Board of Equalization reached the same conclusion: distributions from a qualified plan with assets invested "solely in United States Treasury obligations" are subject to state income tax. *In re Shahandeh*, No. 41860, 2000 WL 1872954, at *1, *4 (Cal. St. Bd. Eq. Nov. 2, 2000). In an earlier decision, the Vermont Supreme Court held that a lump-sum payment from a retirement plan invested solely in U.S. government obligations was exempt from state income tax because of section 3124. *Keys v. Vt. Dep't of Taxes*, 552 A.2d 418, 418 (Vt. 1987). However, we do not find this opinion persuasive because the *Keys* court did not provide any reasoning to explain its decision. No court has followed it.

¶19 Other courts have also observed that entities treated as conduits for tax purposes tend to have certain characteristics justifying this tax treatment. First, they do not benefit from deferred taxation. Income derived from mutual funds, S corporations, and partnerships is taxable in the year in which it is received. *See, e.g., Meunier*, 503 N.W.2d at 129 (noting that mutual fund owners pay annual taxes on earnings). In contrast, funds in Section 401 plans, including the Lees' Plan, are not taxable until distributions are made. The money grows tax-free until the beneficiary begins receiving distributions. *See supra* ¶ 8. Second, investments in conduit entities are made with after-tax dollars. *See, e.g., Meunier*, 503 N.W.2d at 129 (noting that mutual fund investments are made with after-tax dollars). In contrast, the Lees' Plan was funded with the employer's pre-tax dollars, and the Lees did not pay income tax on the contributions when they were made. Thus, Section 401 plans lack some of the key characteristics of conduit entities.

¶20 Because the Lees' Plan is not a tax conduit, the funds do not retain their character as interest on U.S. obligations upon distribution to the Lees. Thus, the distributions are fully taxable by Utah under state and federal law.

## CONCLUSION

¶21 Although we respect the Lees' diligent efforts to comply with the law and their pro se appellate advocacy, we ultimately agree with the Tax Commission that no portion of the Plan

distributions was tax-exempt under Utah Code section 59-10-114(2)(a). Accordingly, we affirm the decision of the Tax Commission.